STATE OF CONNECTICUT *v.* JACK J. DESIMONE
(SC 15567)

Borden, Norcott, Katz, Palmer and McDonald, Js.

Argued January 17—officially released July 1, 1997

*Steven, D. Ecker*, for the appellant (defendant).

*Lawrence J. Tytla*, assistant state's attorney, with whom, on the brief, was *Kevin T. Kane*, state's attorney, for the appellee (state).

*Opinion*

PALMER, J. A jury convicted the defendant, Jack J. Desimone, of larceny in the first degree by receiving various items of stolen property in violation of General Statutes §§ 53a-122 and 53a-119 (8),[1] and larceny in the

---

[1] General Statutes § 53a-122 provides: "Larceny in the first degree: Class B felony. (a) A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and: (1) The property or service, regardless of its nature and value, is obtained by extortion, (2) the value of the property or service exceeds ten thousand dollars, (3) the property consists of a motor vehicle, the value of which exceeds ten thousand dollars, or (4) the property is obtained by defrauding a public community, and the value of such property exceeds two thousand dollars.

"(b) In any prosecution under subdivision (3) of subsection (a) of this section, evidence of (1) forcible entry, (2) forcible removal of ignition or (3) alteration, mutilation or removal of a vehicle identification number shall be prima facie evidence of a larcenous intent.

"(c) Larceny in the first degree is a class B felony."

General Statutes § 53a-119 provides in relevant part: "Larceny defined. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to . . . .

"(8) Receiving stolen property. A person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner. A person who accepts or receives the use or benefit of a public utility commodity which customarily passes through a meter, knowing such commodity (A) has been diverted therefrom, (B) has not been correctly registered or (C) has not been registered at all by a meter, is guilty of larceny by receiving stolen property."

fourth degree by receiving certain other items of stolen property in violation of General Statutes §§ 53a-125[2] and 53a-119 (8). On appeal,[3] the defendant claims that the trial court improperly failed to instruct the jury under General Statutes § 53a-121 (b)[4] that in determining the degree of the crime of larceny by receiving stolen property, the value of multiple items of allegedly stolen property may be aggregated only if the state has established that the defendant received the property pursuant to one scheme or course of conduct. We agree with the defendant and, therefore, we reverse the judgment of conviction.

---

[2] General Statutes § 53a-125 provides: "Larceny in the fourth degree: Class A misdemeanor. (a) A person is guilty of larceny in the fourth degree when he commits larceny as defined in section 53a-119 and the value of the property or service exceeds five hundred dollars.

"(b) Larceny in the fourth degree is a class A misdemeanor."

[3] The defendant appealed from the judgments of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[4] General Statutes § 53a-121 provides: "Value of property or services. (a) For the purposes of this part, the value of property or services shall be ascertained as follows: (1) Except as otherwise specified in this section, value means the market value of the property or services at the time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of replacement of the property or services within a reasonable time after the crime. (2) Whether or not they have been issued or delivered, written instruments, except those having a readily ascertainable market value such as some public and corporate bonds and securities, shall be evaluated as follows: (A) The value of an instrument constituting evidence of debt, such as a check, draft or promissory note, shall be deemed the amount due or collectible thereon, such figure ordinarily being the face amount of the indebtedness less any portion thereof which has been satisfied; (B) the value of any other instrument which creates, releases, discharges or otherwise affects any valuable legal right, privilege or obligation shall be deemed the greatest amount of economic loss which the owner of the instrument might reasonably suffer by virtue of the loss of the instrument. (3) When the value of property or services cannot be satisfactorily ascertained pursuant to the standards set forth in this section, its value shall be deemed to be an amount less than fifty dollars.

"(b) Amounts included in thefts committed pursuant to one scheme or course of conduct, whether from the same person or several persons, may be aggregated in determining the grade of the offense."

Following an investigation into the disappearance of certain items of personal property from Pfizer, Inc. (Pfizer), in Groton, the defendant was charged in two separate cases with larceny in the first degree; *State v. Desimone*, Superior Court, judicial district of New London, Docket No. CR940219155 (June 16, 1995) (hereinafter Docket No. 219155); and larceny in the second degree. *State v. Desimone*, Superior Court, judicial district of New London, Docket No. CR940219154 (June 16, 1995) (hereinafter Docket No. 219154). Prior to trial, the state filed a substitute information in Docket No. 219154 reducing the charge from larceny in the second degree by receiving stolen property to larceny in the third degree by receiving stolen property in violation of General Statutes §§ 53a-124[5] and 53a-119 (8). In addition, the state moved that the two cases be consolidated for trial. The trial court granted the state's consolidation motion, and a joint trial on the two informations commenced on May 30, 1995. At the conclusion of the trial,

[5] General Statutes § 53a-124 provides: "Larceny in the third degree: Class D felony. (a) A person is guilty of larceny in the third degree when he commits larceny as defined in section 53a-119 and: (1) The property consists of a motor vehicle, the value of which is five thousand dollars or less; (2) the value of the property or service exceeds one thousand dollars; (3) the property consists of a public record, writing or instrument kept, held or deposited according to law with or in the keeping of any public office or public servant; or (4) the property consists of a sample, culture, microorganism, specimen, record, recording, document, drawing or any other article, material, device or substance which constitutes, represents, evidences, reflects or records a secret scientific or technical process, invention or formula or any phase or part thereof. A process, invention or formula is 'secret' when it is not, and is not intended to be, available to anyone other than the owner thereof or selected persons having access thereto for limited purposes with his consent, and when it accords or may accord the owner an advantage over competitors or other persons who do not have knowledge or the benefit thereof.

"(b) In any prosecution under subdivision (1) of subsection (a) of this section, evidence of (1) forcible entry, (2) forcible removal of ignition or (3) alteration, mutilation or removal of a vehicle identification number shall be prima facie evidence of a larcenous intent.

"(c) Larceny in the third degree is a class D felony."

the jury convicted the defendant of larceny in the first degree by receiving stolen property as charged in Docket No. 219155. The jury acquitted the defendant of third degree larceny in Docket No. 219154, but convicted him of the lesser included offense of larceny in the fourth degree.[6]

I

THE TRIAL

The evidence adduced at trial may be summarized as follows. Between January, 1993, and January, 1994, several items of property were reported missing from Pfizer, where the defendant was employed as a maintenance mechanic.[7] These items included three Compaq laptop computers, one Dell desktop computer system, one Toro snowblower, three power tools and one utility cart. As described more fully hereinafter, the evidence established that each of these items had been in the defendant's possession after Pfizer had reported the loss of the property.

A

Docket No. 219154

In February, 1994, Philip Schena, a Pfizer employee, informed his supervisor that the defendant had asked him if he was interested in buying a Dell desktop computer system for $500. Schena told the defendant that

---

[6] The trial court sentenced the defendant to a term of imprisonment of eight years, execution suspended after three years, and five years probation on the first degree larceny conviction. The court sentenced the defendant to a one year prison term for his conviction of larceny in the fourth degree to be served concurrently with his sentence for first degree larceny.

[7] The defendant worked the third shift from 11:30 p.m. to 7:30 a.m. During his work hours, the defendant generally was unsupervised and had access to nearly every building on the Pfizer property, including those buildings from which the various items had been reported missing. The defendant also had access to a company truck, which he used to travel between the various Pfizer buildings.

he was interested in purchasing the computer system, and they arranged a time for Schena to examine the system at the defendant's home at 75 Oslo Street in Mystic. After examining the computer system, Schena, who had also reviewed some literature about the system that had been provided to him by the defendant, contacted a Dell customer service representative regarding certain additional questions that he had about the system's operation. When Schena provided the identification number of the computer system to the Dell representative, he was informed that that system had been reported missing by Pfizer. Schena promptly reported this information to his supervisor at Pfizer, and Pfizer authorities in turn provided the information to the Groton police department. Detective Thomas Smith of that department was assigned to investigate the matter.

Smith, posing as a prospective purchaser, contacted the defendant and inquired as to whether the Dell computer system was still for sale. Upon learning that the system was still available, Smith obtained a search warrant for the defendant's 75 Oslo Street residence. The Groton police executed the search warrant on April 5, 1994, and seized the missing Dell computer system from the defendant's residence. The police also seized a utility cart, a Black and Decker drill, a Black and Decker jigsaw, a Milwaukee hammer drill, and a Toro snowblower.[8] All of the seized items, except the snowblower, bore identification as Pfizer property. The alleged theft of these items provided the basis for the information

---

[8] At the time the police executed the search warrant at the 75 Oslo Street home, the defendant and his wife were separated and only his wife resided at that address. Although the warrant authorized the seizure of only the Dell computer system, the defendant's wife consented to a complete search of the residence. The defendant unsuccessfully challenged the propriety of that consensual search in the trial court, and he has not raised the issue of this search and seizure on appeal.

in Docket No. 219154 charging the defendant with larceny in the third degree by receiving stolen property.

At trial, the defendant disputed the state's contention that the items had been stolen. The defendant attempted to show that the Toro snowblower seized from the 75 Oslo Street residence was not the same snowblower that had been reported missing from Pfizer. Specifically, he presented the testimony of his wife and neighbor for the purpose of establishing that the Toro snowblower seized from the defendant's home had been in the defendant's possession prior to the date that the snowblower had disappeared from the Pfizer premises.[9] In addition, although a Pfizer building services supervisor testified that he believed that the snowblower seized by the police was in fact the snowblower that Pfizer had reported missing, he admitted that he could not "say with one hundred percent accuracy" that they were one and the same.

The defendant also claimed that he had not stolen the power tools and the utility cart but, rather, that he had borrowed them so that he could use them on several home repair projects. In support of this claim, the defendant presented evidence that Pfizer policy permits a maintenance employee to take such equipment to his or her home for short periods of time. The evidence also indicated, however, that the defendant had been in possession of these items for far longer than allowed under the company policy. Smith testified about his questioning of the defendant with respect to the missing items. According to Smith, the defendant provided no information regarding the utility cart or the snow-

---

[9] The Toro snowblower allegedly was stolen from Pfizer Building No. 257 on or about January 11, 1994. The defendant's neighbor testified that he had helped the defendant repair the snowblower in November, 1993. The defendant's wife testified that the defendant had acquired the snowblower in November or December, 1993.

blower; he claimed that he had purchased the Dell computer system from a relative in New York whom he refused to identify; and he asserted that he had retained possession of the tools because Pfizer did not have sufficient space to store them, a claim that was refuted by the testimony of a Pfizer supervisor.

The defendant also disputed the value of the allegedly stolen items.[10] According to Gerard Keeler, a Pfizer employee, the value of the Dell computer system on or around the date of its disappearance was approximately $1000 to $1500.[11] On cross-examination, however, Keeler acknowledged that the value of "a computer depreciates very rapidly" and that because "computer technology is changing very rapidly . . . computers that are one to two years old are approaching obsolescence." The defendant adduced testimony from Michael Baker, a computer systems analyst, who estimated that the value of the Dell computer system was about $800 to $900.[12] A Pfizer maintenance supervisor opined that the Black and Decker drill was worth $85 to $90, and valued the Milwaukee hammer drill at approximately $110 to $120. A Pfizer building services supervisor estimated that the Toro snowblower was at least twelve years old and worth approximately $100. No value estimates were given for the Black and Decker jigsaw or the utility cart.

[10] The substitute information did not contain a specific allegation as to the value of each of the stolen items. Rather, the information stated only that the "total value of said property exceeds one thousand dollars."

[11] Another Pfizer employee, Mary Goodman, testified that Pfizer had purchased the Dell computer system in October or November, 1992, for $2618.21.

[12] Baker explained his value estimate as follows: "$2600 is probably what the value [of the Dell computer system] was when it was brand new. A year later, $1000 was gone right off the bat. And after that, it declines rather rapidly. It's only a [model] 4633, which is really a low end [personal computer], even in 1994, because at that time, they were starting to really pick up speed as far as capabilities, so part-wise, about $800 is about it for that machine."

## B

## Docket No. 219155

Shortly after the seizure of the items from the 75 Oslo Street residence, Smith interviewed the defendant regarding the apparent theft from Pfizer of a Compaq Contura laptop computer and two Compaq LTE laptop computers.[13] The defendant told Smith that he was aware that the three computers were missing and, although he refused to say where the computers were located, the defendant suggested that he might be able to retrieve them within several days.

The police thereafter placed the defendant under surveillance, and observed him meet with Robert Gennotti, an employee of a health club frequented by the defendant. At the conclusion of the meeting, the police questioned Gennotti about his relationship with the defendant. According to Gennotti, the defendant had approached Gennotti in December, 1993, and explained that he could acquire laptop computers from a friend. Subsequently, in late December, 1993, the defendant sold Gennotti a Compaq Contura computer for $850. Gennotti later sold the computer through his cousin, Officer Steven Sinagra of the Groton police department, to Lieutenant John Graves of the Groton police department for $800. Evidence adduced by the state indicated that the Compaq Contura computer was one of the three laptop computers that had been reported missing by Pfizer.

---

[13] According to the trial testimony, Pfizer had purchased the Compaq Contura laptop computer on October 29, 1992. It was last seen at the Pfizer premises on December 20, 1993, and was reported missing on January 16 or 17, 1994.

The state's evidence indicated that Pfizer had purchased the Compaq LTE laptop computers in mid-1993, but did not receive delivery of them until late December, 1993, or early January, 1994. Pfizer reported them missing on or about January 14, 1994.

In January, 1994, the defendant again approached Gennotti, showed him a Compaq LTE laptop computer, and explained that this computer also was for sale. When Gennotti indicated that he might be interested in purchasing the Compaq LTE computer, the defendant gave the computer to Gennotti so that Gennotti could try it out. Gennotti took the computer home with him and, thereafter, had Sinagra examine it. Several days later, before Gennotti had agreed to purchase the first Compaq LTE computer, the defendant informed Gennotti that he had a second Compaq LTE computer for sale. Gennotti also had Sinagra examine the second computer.[14] Gennotti and Sinagra eventually purchased both computers for a total of $1100.[15] The alleged theft of the three Compaq laptop computers provided the basis for the information in Docket No. 219155 charging the defendant with larceny in the first degree by receiving stolen property.[16]

The value of the three laptop computers was disputed.[17] Sinagra testified that he thought $1100 was a reasonable price to pay for the Compaq LTE computers at the time. The state, however, presented testimony by Keeler, the Pfizer employee, that the value of those computers, based on their purchase price and the fact that they were "state of the art" when Pfizer purchased them, was approximately $6000 to $7000 each.

[14] According to Sinagra, he examined the two Compaq LTE computers within "[m]aybe a week, a week and a half" of each other.

[15] Although the purchases were made with a single check, the evidence adduced at trial indicated that Gennotti purchased one of the Compaq LTE computers for $200 and Sinagra purchased the other for $900. Gennotti attributed the price difference in the two computers to a possible problem with the hard drive in the computer that he had retained for himself.

[16] The Groton police recovered the three laptop computers.

[17] Like the information in Docket No. 219154, the information in Docket No. 219155 did not specify a value for each computer but, rather, alleged that the total value of the three computers exceeded $10,000.

## C

## The Jury Instructions

At the conclusion of the evidence, the trial court charged the jury as to the four essential elements of the crime of larceny by receiving stolen property. Specifically, the court instructed the jury that it could convict the defendant of that offense only if the state had established beyond a reasonable doubt that: (1) the property was stolen; (2) the defendant had received, retained or disposed of the property; (3) the defendant knew or believed that the property was probably stolen; and (4) with respect to the first degree larceny charge, the aggregate value of the property exceeded $10,000 and, with respect to the third degree larceny charge, the aggregate value of the property exceeded $1000.[18] The defendant excepted to the trial court's jury charge on the element of value,[19] claiming that he was entitled to an instruction under § 53a-121 (b) that the jury could aggregate the value of the various items of property alleged in each of the two informations *only* if it found that the items had been stolen "pursuant to one scheme

[18] In Docket No. 219155, the trial court also instructed the jury that if it unanimously rejected the first degree larceny charge, it nevertheless could convict the defendant of the lesser included offenses of larceny in the second, third, fourth, fifth or sixth degrees if it concluded that the state had established the elements of the offense of larceny by receiving stolen property and the value of that property exceeded $5000, $1000, $500 or $250 or was less than $250, respectively. See General Statutes §§ 53a-122 through 53a-125b. The court gave the jury a similar instruction in Docket No. 219154 as to the lesser included offense of third degree larceny by receiving stolen property. The defendant has not challenged the propriety of these instructions.

[19] Although the defendant did not file a written request to charge with respect to the applicability of § 53a-121 (b), he did raise the claim during a charging conference conducted on the record the day before the trial court charged the jury. Furthermore, the defendant again raised the issue immediately prior to the charge and after the trial court had distributed a written copy of its instructions to the parties. The state, therefore, makes no claim that this issue was not properly preserved. See *State* v. *Angell*, 237 Conn. 321, 326–30, 677 A.2d 912 (1996).

or course of conduct."[20] The trial court overruled the defendant's objection to the instruction, concluding that § 53a-121 (b) is not applicable to the offense of larceny by receiving stolen property.

On appeal, the defendant claims that § 53a-121 (b) gives rise to a jury question in prosecutions under § 53a-

---

[20] The trial court instructed the jury on aggregation for the first degree larceny charge as follows: "Now, the final element that the [s]tate must establish by proof beyond a reasonable doubt is that the property had a value which exceeds $10,000. You must find that the value of the three laptop computers, that is, the two Compaq LTEs and the Compaq Contura, *together had values which when added together* came to an amount which exceeded $10,000.

"Now, again, the charge here involves three laptops. If you were to find that less than all three of the three laptops were stolen or that less than all three were received, retained or disposed of by the [d]efendant or that he did not know or believe that any one or more of them was probably stolen, you must then determine the value of the computers which you do find the [s]tate to have proven all three of [the other elements of the offense of larceny by receiving stolen property]. And if you find, if it's less than all three, if you find that it's all three that were stolen, retained, received or disposed of with the knowledge that they were probably stolen, *such of them that you do find all three of those elements, and if the value of them, whether it be three, two or one, exceeds $10,000*, then you may find the [d]efendant guilty of larceny in the first degree by receiving stolen property.

"You must determine the value of the computers, and those which you have found all three elements present, you then, if you do find so, *aggregate the value of those for which you find those three basic elements.*" (Emphasis added.)

The trial court repeated this instruction in summarizing its instructions on the first degree larceny charge: "As to those computers as to which you find all of the three elements, you then determine the value of that computer, if you can. As to those which you can't and for which the three elements are proved, *you then aggregate, add together, their values.* If it exceeds $10,000, then you can find him guilty of—you must find him guilty of larceny one. If they don't add up to $10,000, but do add up to something in excess of $5000, it's larceny two. If it adds up to more than $1000 but not [more than] $5000, it's larceny three, and so forth, as I told you." (Emphasis added.)

The trial court gave a similar instruction with respect to the charge of larceny in the third degree by receiving stolen property: "The elements again are the same, the first three elements . . . .

"Then you get into the valuations, and you must take the test. If it convinces you that the test—the *values add up to for those which you found all three elements, they add up to more than $1000*, then he's guilty of larceny in

119 (8) and, consequently, that the trial court's failure to instruct the jury in accordance with subsection (b) of § 53a-121 deprived him of his right to a jury determination of an essential element of the offense in violation of the sixth and fourteenth amendments to the federal constitution[21] and article first, §§ 8 and 19, of the state constitution.[22] The defendant further contends that these constitutional violations entitle him to a new trial on each of the two informations. The state maintains that the trial court properly refused to instruct the jury under § 53a-121 (b) and, furthermore, that even if the

the third degree by receiving stolen property. Again, you've got to consider each item, whether it was stolen, whether it was received, retained, disposed of at a time when he knew or believed it was probably stolen, and then the value. Each element, again, must be proven by proof beyond a reasonable doubt.

"If, as to the items which you find stolen, received, retained and disposed of, knowing or believing they were probably stolen, *they add up to $1000* by proof beyond a reasonable doubt, it's larceny in the third degree. If you find the first three elements as to certain items *and then [add] up their value and they don't add up to $1000*, then you go down and see whether it's larceny in the fourth degree; that is, whether it exceeds $500. Then you go down to, if you're all satisfied that he's not guilty of larceny three because it doesn't exceed $1000, you go down and then determine whether he's maybe found guilty of larceny four, which exceeds $500; larceny fifth, exceeds $250; or sixth if it's less than $250." (Emphasis added.)

[21] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . . ." This sixth amendment right applies to the states through the due process clause of the fourteenth amendment. See *Duncan* v. *Louisiana*, 391 U.S. 145, 149, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968).

The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[22] Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have a right to . . . a speedy, public trial by an impartial jury. No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

Article first, § 19, of the Connecticut constitution provides: "The right of trial by jury shall remain inviolate."

court's failure to instruct the jury under that statute
was improper, any such impropriety: (1) was harmless
beyond a reasonable doubt with respect to the defend-
ant's conviction of larceny in the fourth degree in
Docket No. 219154; and (2) entitles the defendant to
no more than a reduction in the degree of his conviction
in Docket No. 219155 from first degree larceny to sec-
ond degree larceny or, in the alternative, to two counts
of larceny in the third degree. We agree with the defend-
ant that he is entitled to a new trial on both charges.

## II

### THE DEFENDANT'S CLAIM OF
### INSTRUCTIONAL ERROR

The defendant maintains that the trial court improp-
erly failed to instruct the jury on an essential element
of the crime of larceny by receiving stolen property,
namely, that in determining the value of the various
items of property comprising each of the two larceny
charges, the jury was entitled to aggregate the value of
those items *only* if it first concluded that the offenses
were "committed pursuant to one scheme or course of
conduct" as required by § 53a-121 (b). The defendant's
argument is predicated on his claim that the legislature
intended the aggregation requirement of § 53a-121 (b)
to be applicable to the crime of larceny by receiving
stolen property just as it is to other forms of larceny.
The state, on the other hand, maintains that § 53a-121
(b), insofar as it applies to the crime of receiving stolen
property, does not give rise to a jury question but, rather,
merely provides guidance to the state on how to charge
a defendant who is alleged to have committed larceny
by receiving multiple items of stolen property. We agree
with the defendant.

A brief overview of the statutory provisions relevant
to our inquiry is helpful to an understanding of the
relationship between § 53a-121 (b) and our larceny stat-

utes generally. Section 53a-119 defines the crime of larceny and sets out a nonexclusive list of ways in which that offense may be committed.[23] One determinant of the grade of the offense of larceny is the value of the property stolen. Under our statutory scheme, the grades of that offense range from first degree larceny, which includes thefts of property exceeding $10,000 in value, to sixth degree larceny, which includes thefts of property valued at $250 or less. See General Statutes §§ 53a-122 through 53a-125b. In addition, § 53a-121 (a) explains how the value of property is to be ascertained. See footnote 4 of this opinion. Finally, § 53a-121 (b) provides that the value of each of the items alleged to have been stolen may be aggregated for purposes of determining the degree of larceny when the thefts were committed pursuant to one scheme or course of conduct.

As we have indicated, receiving stolen property as defined by § 53a-119 (8) is one of the ways in which the crime of larceny may be committed. Thus, the state, in order to establish that the defendant had committed the crime of larceny by receiving stolen property, was required to prove not only that the defendant had received, retained or disposed of stolen property with the knowledge or belief that the property probably had been stolen but also that, with respect to the first degree larceny charge, the value of the property exceeded $10,000 and that, with respect to the larceny in the

---

[23] General Statutes § 53a-119 provides in relevant part: "Larceny defined. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to: (1) Embezzlement. . . . (2) Obtaining property by false pretenses. . . . (3) Obtaining property by false promise. . . . (4) Acquiring property lost, mislaid or delivered by mistake. . . . (5) Extortion. . . . (6) Defrauding of public community. . . . (7) Theft of services. . . . (8) Receiving stolen property. . . . (9) Shoplifting. . . . (10) Conversion of a motor vehicle. . . . (11) Obtaining property through fraudulent use of an automated teller machine. . . . (12) Library theft. . . . (13) Conversion of leased property. . . . (14) Failure to pay prevailing rate of wages. . . ."

third degree charge, the value of the property exceeded $1000. The question that we must decide first, then, is whether, as the defendant claims, only the jury may determine, in accordance with the requirements of § 53a-121 (b), whether to aggregate the value of the items of property comprising each such charge brought under § 53a-119 (8). If so, the trial court's failure to instruct the jury regarding § 53a-121 (b) was improper.

Because the defendant's claim requires us to determine the interrelationship between § 53a-121 (b) and § 53a-119 (8), we are " 'guided by well established principles of statutory construction. Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter.' " (Citations omitted.) *State* v. *Harrell*, 238 Conn. 828, 832, 681 A.2d 944 (1996). Moreover, "[a] statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole." (Internal quotation marks omitted.) *In re Bruce R.*, 234 Conn. 194, 207, 662 A.2d 107 (1995). Applying these tenets of statutory interpretation to the present case, we are persuaded that the requirements of § 53a-121 (b) constitute an essential component of the element of value for purposes of determining the appropriate degree of the crime of larceny by receiving stolen property. Consequently, the defendant was entitled to a jury determination and, therefore, a jury instruction, on aggregation.

Section 53a-121 sets forth the principles to be applied by the fact finder in determining the value of property or services for purposes of the crime of larceny. In particular, subsection (b) of § 53a-121 specifies the circumstances under which the fact finder may aggregate the value of multiple items of stolen property. We find no indication in the pertinent statutory language to support the state's claim that that subsection gives rise to a jury question when applied to other forms of larceny but not to the crime of larceny by receiving stolen property under § 53a-119 (8). Neither § 53a-121 (b), nor any other statutory provision, contains any suggestion that the legislature intended for § 53a-121 (b) to have a more limited applicability to § 53a-119 (8) than to other forms of larceny. Moreover, as the defendant points out, the statutory interpretation urged by the state would afford prosecutors virtually unbridled discretion in deciding whether to aggregate the value of multiple items of allegedly stolen property under § 53a-119 (8).[24] The legislature, if intending such a result, easily could have expressed this intent. See *State* v. *Metz*, 230 Conn. 400, 410, 645 A.2d 965 (1994). Absent compelling countervailing reasons, we will not impute to the legislature an intent that is not apparent from the plain statutory language; *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 195, 663 A.2d 1001 (1995); and we are especially reluctant to do so to the detriment of a criminal defendant in light of the well established rule that penal statutes are to be interpreted strictly against the state. See, e.g., *State* v. *Burns*, 236 Conn. 18, 23, 670 A.2d 851 (1996).

The pertinent legislative history also buttresses the defendant's contention that § 53a-121 (b) is a compo-

---

[24] Indeed, such a result would be contrary to the well established principle that "the requisite intent, scheme or plan to render a series of takings a single larceny . . . is generally recognized to be a question of fact." 50 Am. Jur. 2d 20, Larceny § 8 (1995).

nent of the value element of the crime of larceny by receiving stolen property. In 1969, the legislature revised the penal code in accordance with recommendations by the commission to revise the criminal statutes (commission). See Public Acts 1969, No. 828. In its commentary on the penal code, the commission expressly stated that § 53a-119 (8); Public Acts 1969, No. 828, § 128; was "meant to make clear that the [crime] of . . . receiving stolen property [is a form] of the general crime of larceny." Commission to Revise the Criminal Statutes, Commentary on the Penal Code (1971) p. 62. In the next sentence of its commentary, the commission states that § 53a-121; Public Acts 1969, No. 828, § 123; "sets out the ways in which the value of property is determined." Commission to Revise the Criminal Statutes, supra, p. 63. There is nothing in the commentary to support the state's claim that the aggregation requirement of § 53a-121 (b) applies differently to the crime of larceny by receiving stolen property than to other forms of larceny.[25]

Further support for the statutory construction urged by the defendant also can be found in the interpretations of the American Law Institute's Model Penal Code and the New York penal code, "upon which our legislature relied when it revised the state penal code in 1969." *State* v. *Woods*, 234 Conn. 301, 310, 662 A.2d 732 (1995). According to the commentary to the Model Penal Code,

---

[25] In recognition of the applicability of § 53a-121 (b) to § 53a-119 (8), two publications on model Connecticut jury instructions contain proposed charges for the crime of larceny by receiving stolen property that include the aggregation requirements of § 53a-121 (b). See Criminal Jury Instruction Committee of Judges of the Superior Court, A Collection of Connecticut Selected Jury Instructions, Criminal (3d Ed. 1996) § 9.1, p. 9-3, and § 9.22, p. 9-38; D. Wright, 3 Connecticut Jury Instructions (2d Ed. 1975) § 785, pp. 1268–69, and § 799, p. 1348; see also *State* v. *Adams*, 38 Conn. App. 643, 656–59 and n.17, 662 A.2d 1327, cert. denied, 235 Conn. 908, 665 A.2d 902 (1995) (quoting with approval trial court's jury charge on larceny by receiving stolen property that included instruction that jury may aggregate value of property or services stolen only where thefts committed pursuant to one scheme or course of conduct).

the provisions relating to the grading of theft offenses, which include language that is in all material respects identical to § 53a-121 (b), are deemed to be applicable to "all forms of the theft offense" as that offense is defined in the Model Penal Code. II A.L.I., Model Penal Code and Commentaries (1962) § 223.1 (2), comment 3, p. 138. Although the New York penal code does not contain an express provision comparable to § 53a-121 (b), the New York Court of Appeals long ago concluded that a jury may aggregate the value of stolen property only if "the successive takings be pursuant to a single intent and design and in execution of a common fraudulent scheme." *People* v. *Cox*, 286 N.Y. 137, 141, 36 N.E.2d 84, reargument denied, 286 N.Y 706, 37 N.E.2d 146 (1941); but see *People* v. *Buckley*, 75 N.Y.2d 843, 846, 552 N.E.2d 160, 552 N.Y.S.2d 912 (1990) ("simultaneous possession of stolen property belonging to different persons can be considered one offense and the value of the property aggregated").

Finally, the defendant's assertion that § 53a-121 (b) poses a jury question is consistent with the decisions of the courts in other jurisdictions that have construed a substantially similar statutory provision. See, e.g., *State* v. *Amsden*, 300 N.W.2d 882, 886 (Iowa 1981); *State* v. *Sampson*, 120 N.H. 251, 255–56, 413 A.2d 590 (1980); *State* v. *Childs*, 242 N.J. Super. 121, 131, 576 A.2d 42, cert. denied, 127 N.J. 320, 604 A.2d 596 (1990). Other states have reached the same conclusion under their common law. See, e.g., *State* v. *Allen*, 59 N.M. 139, 140–41, 280 P.2d 298 (1955); *Lockhead* v. *State*, 213 S.W. 653, 654 (Tex. Crim. App. 1919); *State* v. *Vining*, 2 Wash. App. 802, 808–809, 472 P.2d 564 (1970); *State* v. *Spraggin*, 71 Wis. 2d 604, 615, 239 N.W.2d 297 (1976). Indeed, we have found no case, and the state has identified none, in which any court has reached a contrary conclusion.[26]

---

[26] The state contends that "[t]he concept of a scheme or course of conduct is simply inapplicable where actual possession is the essence of the offense."

Accordingly, we conclude that the jury should not have been instructed to aggregate the value of the various items of property identified in each of the informations absent its determination that each alleged offense was "committed pursuant to one scheme or course of conduct." The trial court, therefore, improperly failed to instruct the jury under § 53a-121 (b). Having so concluded, we must now address the state's claim that the defendant nevertheless is not entitled to a new trial on either of the two charges.

## III

### THE STATE'S CLAIMS

The state maintains that even if the trial court's failure to instruct the jury on aggregation under § 53a-121 (b)

We reject this argument because, as we have indicated, it is without support either in the plain language of the statutory scheme or in its legislative history.

The state also argues that the legislature's use of the phrase "may be aggregated" in determining the grade of the offense under § 53a-121 (b) supports its contention that aggregation of the value of multiple items of stolen property is not a jury question because, if construed literally, that provision would allow a jury undue latitude in determining whether to aggregate the value of property that had been stolen "pursuant to one scheme or course of conduct." We also disagree with this contention. In light of its context in the overall statutory scheme, it is apparent that the word "may" as used in § 53a-121 (b) simply refers to the authority lodged in the jury to determine whether the offense has been committed in connection with a single scheme or course of conduct. See 3 J. Sutherland, Statutory Construction (5th Ed. 1992) § 57.03, p. 7. Furthermore, the state's argument would apply with equal force to the valuation of multiple items of stolen property under all other forms of the crime of larceny, a contention that we do not understand the state to be making and one that finds no support in the pertinent statutory language, its history or our precedents.

Finally, the state relies on several decisions of this court in which the jury apparently had aggregated the value of certain items of stolen property in rendering its guilty verdict against the defendant. See *State* v. *Simino*, 200 Conn. 113, 509 A.2d 1039 (1986); *State* v. *Gabriel*, 192 Conn. 405, 473 A.2d 300 (1984); *State* v. *Iasevoli*, 188 Conn. 325, 449 A.2d 996 (1982); *State* v. *Saracino*, 178 Conn. 416, 423 A.2d 102 (1979). These cases are inapposite, however, because in none of them was aggregation an issue on appeal. Indeed, the state has not disputed the defendant's claim that the question presented by this appeal is one of first impression in this state.

was improper, it was nevertheless harmless beyond a reasonable doubt with respect to the defendant's conviction of larceny in the fourth degree in Docket No. 219154 and, therefore, that we should affirm the defendant's conviction of that offense.[27] With respect to the defendant's conviction of larceny in the first degree in Docket No. 219155, the state, relying on a line of cases beginning with *State* v. *Grant*, 177 Conn. 140, 146–49, 411 A.2d 917 (1979), and *State* v. *Saracino*, 178 Conn.

---

[27] "[A]n accused has a fundamental right, protected by the due process clauses of the federal and Connecticut constitutions, to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Hinton*, 227 Conn. 301, 308, 630 A.2d 593 (1993). It is a constitutional requirement, therefore, that the jury be properly instructed on every essential element of the crime charged. See *State* v. *Leroy*, 232 Conn. 1, 7, 653 A.2d 161 (1995); *State* v. *Allen*, 216 Conn. 367, 383, 579 A.2d 1066 (1990). In the event of instructional impropriety regarding an element of the offense, the defendant is entitled to a new trial unless the state can establish that it was not reasonably possible that the jury was misled by the instructional error. See *State* v. *Bryant*, 233 Conn. 1, 9, 658 A.2d 89 (1995).

The defendant maintains that harmless error analysis does not apply in this case because the trial court failed to instruct the jury on an essential element of the offense. See, e.g., *State* v. *Payne*, 12 Conn. App. 408, 415–16, 530 A.2d 1110 (1987) ("[T]he total failure . . . to instruct on the essential elements of the crime charged is analogous to a directed verdict. . . . [This] failure . . . effectively deprived the jury of the opportunity to consider whether those elements were proven. The defendant, however, had elected a trial by jury and was entitled to have that entity apply the substantive law to the facts of the case."); *State* v. *Hamilton*, 30 Conn. App. 68, 78, 618 A.2d 1372 (1993) (same), aff'd, 228 Conn. 234, 636 A.2d 760 (1994); cf. *Johnson* v. *United States*, 520 U.S. 461, 467–69, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997). In the present case, however, the trial court did not *fail* to give an instruction on valuation but, rather, gave a defective instruction on that element of the offense. We previously have concluded that a misstatement of the law regarding an element of the offense is an impropriety for which harmless error analysis is appropriate; see, e.g., *State* v. *Faust*, 237 Conn. 454, 469–71, 678 A.2d 910 (1996); *State* v. *Wolff*, 237 Conn. 633, 668–71, 678 A.2d 1369 (1996); *State* v. *Prioleau*, 235 Conn. 274, 285–91, 664 A.2d 743 (1995); *State* v. *Cerilli*, 222 Conn. 556, 582–85, 610 A.2d 1130 (1992); and we therefore engage in such review in this case. Nevertheless, as we have indicated, the state bears the substantial burden of establishing that the instructional error on the element of value was harmless beyond a reasonable doubt.

416, 420–21, 423 A.2d 102 (1979),[28] argues that notwithstanding any instructional impropriety, the jury's verdict necessarily included factual findings sufficient to convict the defendant of the lesser included offense of larceny in the second degree or, alternatively, of two counts of larceny in the third degree. The state maintains, therefore, that we should remand the case to the trial court with direction to modify the judgment and to resentence the defendant. We are not persuaded by these arguments.

A

We first address the state's claim of harmless error regarding the defendant's conviction of larceny in the fourth degree. The state contends that the "record . . . conclusively establishes that the trial court's refusal to give the requested instruction was harmless to the defendant." The state's argument proceeds as follows. In order to have found the defendant guilty of larceny in the fourth degree, the jury must have concluded that the value of the stolen items exceeded $500. The evidence established that the value of the snowblower was, at most, $100, and the combined value of the drills was no more than $210. Furthermore, there was no testimony establishing a specific value for either the utility cart or the jigsaw. Thus, the total value of the items excluding the Dell computer system was not more

[28] In *State* v. *Grant*, supra, 177 Conn. 147, and *State* v. *Saracino*, supra, 178 Conn. 421, we held that even though the trial evidence did not support the defendant's conviction of the offense charged, we were free to modify the judgment to reflect a conviction of a lesser crime. We came to this conclusion because the evidence was sufficient to support a conviction of a lesser included offense on which the jury properly had been charged *and* the jury's verdict necessarily included a finding that the defendant was guilty of that lesser offense. See also *State* v. *Carpenter*, 214 Conn. 77, 85, 570 A.2d 203 (1990), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed. 2d 781 (1992); *State* v. *Scielzo*, 190 Conn. 191, 204–205, 460 A.2d 951 (1983); *State* v. *Coston*, 182 Conn. 430, 437, 438 A.2d 701 (1980).

than $310. The jury, because it determined that the defendant had received stolen property in excess of $500, and because the maximum aggregated value of the other items did not exceed $500,[29] necessarily found that the defendant had received the Dell computer system unlawfully. Because the defendant's own witness, Baker, placed the value of the Dell computer system at between $800 and $900,[30] and viewing the evidence in the light most favorable to the defendant, the jury must have concluded that the Dell computer system had a value of between $800 and $900, an amount in excess of the $500 threshold amount necessary to support a conviction of larceny in the fourth degree. Thus, the state claims, there is no reasonable possibility that the jury's verdict of fourth degree larceny was predicated upon factual findings that required it to aggregate the value of any of the allegedly stolen items in reaching its determination that the stolen property exceeded $500 in value.

The state's analysis is flawed because it assumes that the jury necessarily found that the value of the Dell computer system was $800 to $900. Although the jury was not free to engage in speculation or conjecture regarding the value of the computer system; see *State v. Saracino*, supra, 178 Conn. 419; "[e]vidence regarding value 'is to aid the trier to arrive at [its] own conclusion which is to be reached by weighing the opinions of the

---

[29] Although there was no testimony as to the value of the jigsaw or the utility cart, the jury presumably was free to value each item at not more than $50. See General Statutes § 53a-121 (a) (3) ("[w]hen the value of property or services cannot be satisfactorily ascertained pursuant to the standards set forth in this section, its value shall be deemed to be an amount less than fifty dollars"). The state's failure, however, to account for a combined value of a maximum of slightly less than $100 for those two items does not materially affect its harmless error analysis because, even adding that amount to the state's total of $310, the aggregated value of all of the items other than the Dell computer system still would be less than $500.

[30] See footnote 12 of this opinion and accompanying text.

experts in light of all the circumstances in evidence bearing on value and [its] own general knowledge going to establish it.' *Bridgeport Hydraulics Co.* v. *Stratford,* 139 Conn. 388, 397–98, 94 A.2d 1 (1953)." *State* v. *Williams,* 199 Conn. 30, 42, 505 A.2d 699 (1986); see also C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 7.16.6. Thus, notwithstanding the value estimate of the defendant's witness, the jury reasonably could have concluded that the Dell computer system was worth $500 or less because, as the trial evidence revealed, the defendant had offered to sell the computer system to Schena for $500. Moreover, Keeler, a Pfizer employee, testified that computers depreciate rapidly in value and, further, that "computers that are one to two years old are approaching obsolescence." Because the Dell computer system, which Pfizer had purchased in late 1992 for $2618.21,[31] was well over a year old at the time it was discovered in the defendant's possession, the jury, in light of Keeler's testimony, was free to conclude that the system had depreciated in value more rapidly than even the defendant's witness had estimated. Consequently, because the state's harmless error analysis is predicated upon the erroneous assumption that the jury *necessarily* concluded that the Dell computer system exceeded $500 in value, the state's harmless error claim must fail.[32]

B

With respect to Docket No. 219155, the state claims that "[i]rrespective of any instructional error [regarding aggregation], the record below establishes [beyond a reasonable doubt] all of the elements of the lesser offense of larceny in the second degree . . . ." In the alternative, the state claims that the jury verdict neces-

---

[31] See footnote 11 of this opinion.

[32] The state does not claim that the evidence adduced in Docket No. 219154 necessarily supports a conviction of a lesser degree of the crime of larceny by receiving stolen property and, therefore, we do not address that issue.

sarily included a determination that the defendant committed two counts of larceny in the third degree. We disagree.

In support of its first claim, the state argues as follows. In order to have convicted the defendant of larceny in the first degree, the state was required to prove that the value of the allegedly stolen property exceeded $10,000. The only evidence regarding the value of the Compaq Contura computer was that Gennotti had purchased it from the defendant for $850; in the state's view, therefore, the jury necessarily found that the Contura was worth $850. The state presented evidence that each of the two Compaq LTE computers was valued at between $6000 and $7000 shortly before they were sold by the defendant. Thus, in order to have convicted the defendant of first degree larceny by receiving stolen property, the jury necessarily found that the combined value of the two Compaq LTE computers was not less than $9150. The state next asserts that, in light of the trial evidence, no reasonable juror could have reached a conclusion other than that the two Compaq LTE computers were received by the defendant pursuant to a single scheme or course of conduct.[33] Thus, the state claims, the "jury necessarily found all of the elements of larceny in the second degree, including value in excess of the threshold amount of $5000."

We are not persuaded by this argument. The state's analysis is predicated on its assertion that the evidence adduced at trial *required* a determination by the jury that the two Compaq LTE computers had been unlawfully received by the defendant "pursuant to one scheme

[33] In support of this assertion, the state relies primarily on the trial testimony indicating that the two Compaq LTE computers apparently disappeared from Pfizer at the same time, and that Gennotti paid for the two computers with one check. See footnote 15 of this opinion. We note that the state does not contend that the evidence required a jury determination that *either one* of the two Compaq LTE computers had a value exceeding $5000.

or course of conduct."[34] This contention is not borne out by the evidence, which included testimony by Gennotti that the defendant did not offer the second Compaq LTE computer for sale until several days after the first. Moreover, the evidence did not establish exactly when the defendant received the two computers or whether he received or possessed them at the same time. Thus, we cannot say that the evidence *necessarily compelled* the conclusion that the defendant's unlawful receipt of the two computers was part of a single scheme or course of conduct.

In the alternative, the state suggests that we should remand the case to the trial court with direction to modify the judgment to reflect a conviction of *two counts* of larceny in the third degree by receiving stolen property. The state argues that because the jury returned a verdict convicting the defendant of larceny of property valued in excess of $10,000, the jury necessarily valued each of the two Compaq LTE computers at more than $1000, the threshold amount for the crime of third degree larceny. We are not persuaded by this claim. The defendant was charged with *one count* of larceny in Docket No. 219155, and a verdict of guilty of *two counts* of larceny in that case would have been unlawful. The state has cited no authority, and we are aware of none, to support its claim that we may modify a judgment to achieve a result which, if reached by the jury, would have been illegal. Indeed, the modification urged by the state—a modification that would have resulted in the defendant's conviction of *two* felonies when he had been charged with only *one*—would be contrary to the rationale underlying our holdings in *State* v. *Grant,* supra, 177 Conn. 146–47, and *State* v. *Saracino,* supra, 178 Conn. 421. In *Grant* and *Saracino,*

---

[34] For purposes of this appeal, we will assume, arguendo, that the state's contention is not necessarily defeated by the defendant's fundamental right to a jury determination as to each and every element of the offense.

we concluded that it was appropriate to modify the judgment of conviction to reflect a lesser included offense only because the defendant could not possibly have been prejudiced by such a modification due to the fact that the jury's verdict necessarily included a determination of guilt of the lesser included offense *and* the jury "could have explicitly returned such a verdict." *State* v. *Grant,* supra, 148–49; *State* v. *Saracino,* supra, 421. Accordingly, the state's alternative claim must also fail.[35]

The judgments are reversed, and the cases are remanded for a new trial.

In this opinion the other justices concurred.

MCDONALD, J., concurring. I concur in the result reached by the majority opinion.

I do not agree, however, that a jury must always be instructed, pursuant to General Statutes § 53a-121, that it may aggregate the value of stolen property only if it finds a common scheme or course of conduct. In this case, the trial court instructed the jury that "[t]he state must . . . have proved that the defendant received, retained or disposed of the stolen property." See General Statutes § 53a-119 (8). Where a defendant is not charged simply with the possession of stolen goods, the rule that separate thefts cannot be considered together as to the value of stolen property absent a common scheme or course of conduct may apply. Such an instruction is not required where a defendant is charged only with the simultaneous possession of stolen property. *People* v. *Buckley,* 75 N.Y.2d 843, 846, 552 N.E.2d 160, 552 N.Y.S.2d 912 (1990); *People* v. *Loret,* 136 App. Div. 2d 316, 317, 526 N.Y.S.2d 872 (1988).

---

[35] Because the state does not claim that we should modify the judgment to reflect a conviction of *one count* of larceny in the third degree, we do not address that issue.