## STATE OF CONNECTICUT *v.* QUENTIN T. RAY
### (SC 17905)

Rogers, C. J., and Katz, Palmer, Vertefeuille and Schaller, Js.

Argued September 16, 2008—officially released January 6, 2009*

* The state's motion to correct the opinion was granted on February 25, 2009. This opinion has been superseded by *State* v. *Ray*, 290 Conn. 602, 966 A.2d 148 (2009).

*Kent Drager*, senior assistant public defender, with whom, on the brief, were *Michael C. Walker*, supervisory assistant public defender, and *Neal Cone*, senior assistant public defender, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Michael Colombo*, former assistant state's attorney, for the appellee (state).

*Opinion*

ROGERS, C. J. The defendant, Quentin T. Ray, was convicted, after a trial to the court, of five counts of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b),[1] six counts of possession of narcotics in violation of General Statutes § 21a-279 (a), five counts of sale of narcotics within 1500 feet of a school or qualifying housing project in violation of General Statutes § 21a-278a (b) and one count of possession of drug paraphernalia in violation of General Statutes §§ 21a-267 and 21a-240 (20).[2] The defendant appeals[3] from his conviction under § 21a-278 (b), claiming that: (1) this court's previous cases construing § 21a-278 (b) and General Statutes § 21a-269[4]

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years . . . ."

[2] The defendant was acquitted of charges of interfering with a police officer in violation of General Statutes § 53a-167a.

[3] The defendant appealed from the judgments of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[4] General Statutes § 21a-269 provides: "In any complaint, information or indictment, and in any action or proceeding brought for the enforcement of any provision of this part, it shall not be necessary to negative any exception, excuse, proviso or exemption contained in said section, and the

to require the defendant to prove by a preponderance of the evidence that he was drug-dependent were wrongly decided; (2) if our interpretation of the statutes in those cases was correct, the requirement that he prove his dependence on drugs under §§ 21a-278 (b) and 21a-269 violates his due process right to have every element of the offense proved beyond a reasonable doubt; (3) if that requirement is not unconstitutional, the trial court improperly found that he had not met his burden of proving his drug dependency; and (4) the trial court improperly structured the defendant's sentence. We reject the defendant's first two claims but conclude that the trial court improperly found that the defendant was not drug-dependent at the time of the offenses. Accordingly, we need not reach the defendant's fourth claim.

The trial court reasonably could have found the following facts. In September, 2001, John Kripinski, a detective with the Danbury police department, was assigned to the Stamford police department to make undercover narcotics purchases. After Diedrich Hohn, an officer with the Stamford police department, learned from a confidential informant that the defendant was selling crack cocaine, Kripinski arranged to meet with the defendant on six occasions to purchase drugs. Two transactions took place at the corner of Frederick Street and Shippan Street in Stamford, which is 1251 feet from the Rogers School. Three transactions took place in an area near Cove Road and Van Buskirk Avenue in Stamford, which is 116 feet from the Ursula housing project. The defendant chose the locations for all of the transactions. Kripinski arranged the final purchase for November 15, 2001. When the defendant arrived at the appointed location, instead of finding Kripinski, he was met by a team of police officers who arrested him.

burden of proof of any such exception, excuse, proviso or exemption shall be upon the defendant."

Thereafter, the defendant was charged with multiple drug offenses, including five counts of sale of narcotics by a person who is not drug-dependent in violation of § 21a-278 (b). The defendant waived his right to a jury trial and was tried by the court. At the close of the state's case, the defendant filed a motion for judgment of acquittal in which he argued, inter alia, that the state had failed to prove that he was not drug-dependent. The state responded that the burden was on the defendant to prove that he was drug-dependent. See General Statutes § 21a-269 (defendant bears "burden of proof of any . . . exception . . . or exemption" from liability). The trial court denied the defendant's motion for judgment of acquittal with respect to the charges under § 21a-278 (b).[5]

During the defendant's case-in-chief, he presented evidence that he was drug-dependent. At the close of his case, he renewed his motion for judgment of acquittal, but the trial court denied the motion. The state then presented evidence to rebut the defendant's evidence that he was drug-dependent.[6] During closing arguments, the defendant argued that, because he had presented evidence that he was drug-dependent, under this court's decision in *State* v. *Januszewski*, 182 Conn. 142, 169, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981), the burden had shifted to the state to disprove his drug dependency beyond a reasonable doubt. The trial court did not make an express ruling on the defendant's legal claim regarding the burden of proof under § 21a-278 (b), but concluded that the defendant had not presented sufficient evidence of drug dependency to present the issue to a fact finder. A fortiori, the court concluded, the defendant

---

[5] The trial court granted the defendant's motion for judgment of acquittal with respect to the charges of interfering with a police officer.

[6] The evidence presented by the defendant and the state concerning the defendant's drug dependency is summarized in part III of this opinion.

had not proved by a preponderance of the evidence that he was drug-dependent. The court then rendered a verdict of guilty on all of the drug charges against the defendant, including the five counts under § 21a-278 (b), and rendered judgments accordingly. This appeal followed.

## I

We first address the defendant's claim that the trial court should not have required him to prove that he was drug-dependent by a preponderance of the evidence because our previous cases construing §§ 21a-278 (b) and 21a-269 to impose that burden were wrongly decided. At trial, the defendant relied on this court's decision in *State* v. *Januszewski*, supra, 182 Conn. 169, to support his claim that, once he had produced substantial evidence of his dependence on drugs, the burden shifted to the state to prove beyond a reasonable doubt that he was not drug-dependent. The defendant now acknowledges that this portion of *Januszewski* was overruled in *State* v. *Hart*, 221 Conn. 595, 609, 605 A.2d 1366 (1992), in which this court held that the burden was on the defendant to prove an exception under § 21a-269 by a preponderance of the evidence. *Hart* upheld the holding of *Januszewski*, however, that drug dependency was an exception to § 21a-278 (b) under § 21a-269 and was not an element of the offense. Id., 608. The defendant now claims that both *Januszewski* and *Hart* wrongly held that the absence of drug dependency is not an element of § 21a-278 (b).[7] The

---

[7] The defendant did not raise this claim in the trial court and, therefore, the claim was not preserved for review. We note, however, that the claim is purely legal and has been briefed by both parties, the record is adequate for review and the state raises no objection to our review. Moreover, the claim is intertwined with the defendant's constitutional claim and, if we were to agree with the defendant, we would not be required to consider the constitutionality of the statute. See *State* v. *Ritrovato*, 280 Conn. 36, 50, 905 A.2d 1079 (2006) ("[t]his court has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case" [internal quotation marks omitted]). Finally, it would have been

defendant also contends that, even if those cases correctly held that the legislature intended drug dependency to be an exception, and not an element of § 21a-278 (b), this court wrongly held in *Hart* that the "burden of proof" language of § 21a-269 requires the defendant to prove the exception by a preponderance of the evidence. The state contends that all of the defendant's arguments in support of his claims previously have been considered and rejected by this court. Accordingly, it contends, the defendant's claims are barred by the doctrines of stare decisis and legislative acquiescence. We agree with the state.

Because an understanding of this court's cases construing § 21a-278 (b) and the evidentiary burden that the statute places on the defendant is required to address the state's claims of stare decisis and legislative acquiescence, we begin with a closer review of those cases. Section 21a-278 (b) provides in relevant part that "[a]ny person who . . . sells . . . to another person any narcotic substance . . . and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years . . . ." In *State* v. *Januszewski*, supra, 182 Conn. 162–63, the defendant claimed that the trial court improperly had failed to instruct the jury that, under General Statutes (Rev. to 1977) § 19-480a (b), the predecessor to § 21a-278 (b), the fact that the defendant was not dependent on drugs was an element of the crime that the state was required to prove beyond a reasonable doubt. The trial court had concluded that drug dependency was an exception to the

futile if the defendant had raised this claim at trial because the trial court had no power to overrule our decisions construing § 21a-278 (b). Accordingly, we review the claim in the exercise of our supervisory powers. See *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 507, 636 A.2d 1342 (1994) (reviewing unpreserved claim under general supervisory and control power "[i]n view of the adequate record . . . and the significance of the issue to . . . the parties").

general prohibition in § 19-480a (b), and that General Statutes (Rev. to 1977) § 19-474, the predecessor to § 21a-269, placed the burden on the defendant to produce some evidence of that exception. Id., 164. On appeal, this court concluded that, because the defendant's status as a person who is not drug-dependent was "not a part of the prohibited conduct, i.e., the possession of a certain quantity of a narcotic substance with intent to sell"; id., 166; that status was not an essential element of § 19-480a (b). Rather, persons who were drug-dependent were exempted from the operation of § 19-480a (b). Id. Under *State* v. *Brown,* 163 Conn. 52, 66–67, 301 A.2d 547 (1972), the burden of producing evidence of an exception under § 19-474 rested initially on the defendant. This court noted that this interpretation of § 19-480a (b) found support in the principle that "the state [generally] bears no initial burden of proof on matters personal to the defendant and peculiarly within his own knowledge." *State* v. *Januszewski,* supra, 167. This court also noted that "[t]he constitutionality of allocating to the defendant the burden of proof on this mitigating factor is without doubt after the [United States] Supreme Court's decision in *Patterson* v. *New York,* 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977)." *State* v. *Januszewski,* supra, 168. Accordingly, we concluded that, under §§ 19-474 and 19-480a, the burden was on the defendant to produce "some substantial evidence tending to prove his drug dependency at the time of the offense . . . ." Id., 169. Thereafter, "the matter of his drug dependency becomes an issue in the case, § 19-474 . . . loses all operative effect and the burden rests on the state, as it does in all other essential elements in the case, to prove beyond a reasonable doubt that the accused was not entitled to the benefit of [the] excuse, proviso or exemption claimed by him." (Internal quotation marks omitted.) Id.

In *State* v. *Hart*, supra, 221 Conn. 607, this court
again considered the question of who has the burden
of proving drug dependency, or its absence, under § 21a-
278 (b). On appeal to this court, the state claimed that
*Januszewski* had been incorrectly decided and that
the defendant should bear the burden of proving by a
preponderance of the evidence that he was dependent
on drugs under § 21a-278 (b). Id. A majority of this
court agreed. Id. The majority determined that, under
*Januszewski*, the absence of drug dependency was not
an element of § 21a-278 (b), but, rather, drug depen-
dency was an exception to that statute within the mean-
ing of § 21a-269. Id., 608. The majority then concluded
that it would "overly strain the language [of § 21a-269]
that places the 'burden of proof' on a defendant to
construe it merely to mean, as *Brown* and *Januszewski*
suggest, that the defendant need only raise some evi-
dence of his or her drug dependency to shift the burden
to the state to prove a negative, i.e., lack of drug depen-
dency, beyond a reasonable doubt." Id., 609. Accord-
ingly, a majority of this court overruled what we
characterized as dicta in *Brown* and *Januszewski* that,
once the defendant has produced some evidence that
he is dependent on drugs, the burden shifts to the state
to prove beyond a reasonable doubt that the defendant
is not drug-dependent.[8] Id. Rather, we concluded that
"§ 21a-269 assigns to the defendant the burden of per-
suading the jury by a preponderance of the evidence
that he or she is drug-dependent." Id., 610–11.

Finally, the majority rejected the defendant's claim
that this construction of § 21a-278 (b) was unconstitu-
tional because it relieved the state of its burden of

---

[8] We concluded that the portions of *Brown* and *Januszewski* addressing
the quantum of evidence that the defendant was required to produce to
meet his burden were dicta because, in both of those cases, the defendant
had produced no evidence of drug dependency. *State* v. *Hart*, supra, 221
Conn. 608–609.

proving all of the elements of the offense. Id., 611. We noted that, under the decisions of the United States Supreme Court in *McMillan* v. *Pennsylvania*, 477 U.S. 79, 85, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986), and *Patterson* v. *New York*, supra, 432 U.S. 210, "[t]he federal due process clause does not bar state legislatures from placing the burden on a defendant to prove an affirmative defense or to prove that he or she falls within an exemption to liability for an offense." *State* v. *Hart*, supra, 221 Conn. 611.

In a dissenting opinion, Justice Berdon contended that the absence of drug dependency is an element of § 21a-278 (b). Id., 615. In support of this contention, he relied on the legislative history of the statute. Id., 620 (*Berdon, J.*, dissenting). He noted that the sponsor of the bill, Representative Bernard Avcollie, had stated during debates on the proposed legislation that the " 'intent of the bill is to give the state's attorney and the prosecuting attorney an opportunity to charge [a crime in addition to General Statutes § 21a-277][9] which does carry a harder sentence which goes towards imprisoning the person who is not drug-dependent and

[9] General Statutes § 21a-277 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

Section 21a-277 was enacted in 1967; see Public Acts 1967, No. 555, § 36; four years before the legislature enacted § 21a-278 (b), then codified at § 19-480a (b). See Public Acts 1971, No. 812, § 1. The elements of § 21a-278 (b) are identical to the elements of § 21a-277, but § 21a-277 does not contain any provision relating to the drug dependency of the offender.

who is, in fact, selling drugs for a profit.' 14 H.R. Proc., Pt. 10, 1971 Sess., pp. 4616–17 . . . ." *State* v. *Hart*, supra, 221 Conn. 619. Representative Avcollie also had stated that " 'in order to charge under this law, a state's attorney . . . would have to take advantage of [§ 21a-277 (a)] . . . and have the party arrested and examined for drug dependency. In other words, you would first have to prove that he was or was not addicted and then charge him with the crime.' 14 H.R. Proc., [supra], p. 4622." *State* v. *Hart*, supra, 620 (*Berdon, J.*, dissenting). Justice Berdon argued that, in light of this legislative history, it was apparent that this court's holding in *Januszewski*, that the absence of drug dependency was " 'not part of the prohibited conduct,' " was incorrect. Id., quoting *State* v. *Januszewski*, supra, 182 Conn. 166. Rather, Justice Berdon argued, § 21a-278 (b) "was promulgated for the sole purpose of making the charge of possession with intent to sell by a person who is not drug-dependent subject to more severe penalties than already available under existing law." *State* v. *Hart*, supra, 620.

Justice Berdon also pointed out that, "[i]f an exception is an integral part of the enacting or prohibition clause of a criminal statute, it is deemed an essential element of the crime, and the state must plead and prove that the defendant is not within the exception. *State* v. *Anonymous*, 179 Conn. 516, 519–20, 427 A.2d 403 (1980); *State* v. *Beauton*, 170 Conn. 234, 240, 365 A.2d 1105 (1976). Where an exception to a prohibition is situated separately from the enacting clause, the exception is to be proven by the defense. *State* v. *Tinsley*, 181 Conn. 388, 402, 435 A.2d 1002 (1980) [overruled on other grounds by *State* v. *Pinnock*, 220 Conn. 765, 601 A.2d 521 (1992)]." (Internal quotation marks omitted.) *State* v. *Hart*, supra, 221 Conn. 621–22.

In the present case, the defendant contends that, contrary to our holdings in *Januszewski* and *Hart*, and

consistent with Justice Berdon's dissent in *Hart*, § 21a-278 (b) effectively is an aggravated form of § 21a-277 and, therefore, the "not . . . a drug-dependent person" language in § 21a-278 (b) constitutes an aggravating factor that must be treated as an element and must be proven by the state. He further contends that the chronology of the statutes[10] and the legislative history of § 21a-278 (b) support this interpretation.

If we were writing on a blank slate, we might find persuasive the defendant's argument that, contrary to our holding in *State* v. *Januszewski*, supra, 182 Conn. 167, the "not . . . a drug-dependent person" language in § 21a-278 (b) does not create an exception for drug-dependent persons. The phrase is an integral part of § 21a-278 (b) and does not include language, such as the words "unless" or "except," that typically connotes an exception. See *State* v. *Anonymous*, supra, 179 Conn. 518–20. We also are compelled to acknowledge that the defendant's position finds some support in the chronology of the statutes and the legislative history of § 21a-278 (b).

As the state points out, however, all of the defendant's arguments in support of his claim expressly were raised and rejected by this court sixteen years ago in *State* v. *Hart*, supra, 221 Conn. 595. "The doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . Stare decisis is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency. . . . It is the most important application of a theory of decisionmaking consistency in our legal culture and . . . is an obvious

---

[10] See footnote 9 of this opinion.

manifestation of the notion that decisionmaking consistency itself has normative value. . . .

"Moreover, [i]n evaluating the force of stare decisis, our case law dictates that we should be especially wary of overturning a decision that involves the construction of a statute. . . . When we construe a statute, we act not as plenary lawgivers but as surrogates for another policy maker, [that is] the legislature. In our role as surrogates, our only responsibility is to determine what the legislature, within constitutional limits, intended to do. Sometimes, when we have made such a determination, the legislature instructs us that we have misconstrued its intentions. We are bound by the instructions so provided. . . . More often, however, the legislature takes no further action to clarify its intentions. Time and again, we have characterized the failure of the legislature to take corrective action as manifesting the legislature's acquiescence in our construction of a statute. . . . Once an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision." (Citation omitted; internal quotation marks omitted.) *State* v. *Salamon*, 287 Conn. 509, 519–20, 949 A.2d 1092 (2008).

The defendant in the present case has pointed to no developments in the law, no potential for unconscionable results, no irreconcilable conflicts and no difficulties in applying our construction of § 21a-278 (b) in *Januszewski* and *Hart* that would justify overruling those cases.[11] Cf. id., 520–27. Indeed, as we recognized in *Hart*, public policy militates strongly in favor of those

---

[11] We address and reject the defendant's claim that developments in constitutional jurisprudence require this court to overrule *Januszewski* and *Hart* in part II of this opinion.

decisions. See *State* v. *Hart*, supra, 221 Conn. 610 (recognizing "difficulty of disproving drug dependency" and unlikelihood that legislature intended to mandate "acquittal whenever the defendant has offered evidence that might be completely disbelieved by the jury"). We also find it significant that the legislature has amended § 21a-278 (b) several times since our decision in *Hart*, and has chosen not to amend the statute to clarify that the absence of drug dependency was intended to be an element of the offense. See Public Acts 2006, No. 06-196, § 254; Public Acts 2005, No. 05-248, § 8; Public Acts 2001, No. 01-195, § 92; *State* v. *Salamon*, supra, 287 Conn. 525 ("[l]egislative concurrence is particularly strong [when] the legislature makes unrelated amendments in the same statute" [internal quotation marks omitted]). Accordingly, we decline to overrule our holdings in *Januszewski* and *Hart* that § 21a-278 (b) creates an exception for drug-dependent persons, and that the absence of drug dependency is not an element of the offense. For similar reasons, we decline to overrule our decision in *Hart* that the "burden of proof" language of § 21a-269 requires the defendant to prove an exception by a preponderance of the evidence. We conclude, therefore, that the trial court in the present case properly required the defendant to prove his dependence on drugs by a preponderance of the evidence.

## II

We next address the defendant's claim that the requirement that the defendant prove drug dependency by a preponderance of the evidence under §§ 21a-278 (b) and 21a-269 is unconstitutional under the United States Supreme Court's decision in *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and its progeny. In *Apprendi*, the court considered the constitutionality of a New Jersey statute that provided for an extended term of imprisonment if the trial court found, by a preponderance of the evi-

dence, that "[t]he defendant in committing the [underlying] crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." (Internal quotation marks omitted.) Id., 468–69. The defendant claimed that he had a constitutional due process right to have a jury find such bias beyond a reasonable doubt. Id., 475–76. The court noted that it was well established that, "under the [d]ue [p]rocess [c]lause of the [f]ifth [a]mendment, and the notice and jury trial guarantees of the [s]ixth amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." (Internal quotation marks omitted.) Id., 476. Because the New Jersey statute allowed the sentencing court to impose punishment identical to that imposed for first degree offenses, even though the defendant had been convicted by the jury of only a second degree offense, the court concluded that the statute was unconstitutional. Id., 491–92.

In the present case, the defendant claims that, because the elements of §§ 21a-277 (a) and 21a-278 (b) are identical, but the conviction of a defendant who has been found not to be drug-dependent under § 21a-278 (b) results in a greater punishment than a conviction under § 21a-277 (a), the absence of drug dependency is a " 'fact . . . that increases the maximum penalty for a crime' "; id., 476; and, therefore, under *Apprendi*, it must be found by the fact finder beyond a reasonable doubt. In support of this claim, the defendant notes that *Apprendi* has been construed to mean that, "[i]f a [s]tate makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the [s]tate labels it—must be found by a jury beyond a reasonable doubt." *Ring* v. *Arizona*, 536 U.S. 584, 602, 122 S. Ct. 2428, 153 L. Ed. 2d 556

(2002); see also *Apprendi* v. *New Jersey*, supra, 530 U.S. 476 ("[m]erely using the label 'sentence enhancement' to describe [that fact] surely does not provide a principled basis for treating [it as something other than an element]"); *Apprendi* v. *New Jersey*, supra, 494 ("the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"). Thus, the defendant argues, the mere fact that the absence of drug dependency is labeled as an exception to § 21a-278 does not mean that it does not have the character of an element for constitutional purposes. We disagree.

At the outset, we consider whether the defendant's claim that it is unconstitutional under *Apprendi* to require him to prove drug dependency is reviewable. The defendant acknowledges that, because he did not raise the claim in the trial court, the claim was not preserved. Accordingly, he seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[12] Because the record is adequate for review and the defendant's claim is of constitutional magnitude, we conclude that the claim is reviewable. We also conclude, however, that the defendant cannot prevail on his claim because there was no constitutional violation.

---

[12] Under *Golding*, a defendant can prevail on an unpreserved constitutional claim on appeal only if all of the following conditions are satisfied: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40. "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 360, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005).

A review of the United States Supreme Court cases leading up to *Apprendi* provides the legal background for our resolution of this claim. In *Patterson* v. *New York*, supra, 432 U.S. 198, the United States Supreme Court was confronted with a New York law that permitted "a person accused of murder to raise an affirmative defense that he 'acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse.' " If the defendant proved this defense by a preponderance of the evidence, then the murder charge would be reduced to manslaughter. Id., 199–200. The defendant claimed that this statutory scheme was unconstitutional under *Mullaney* v. *Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975), in which the court had invalidated a Maine law providing that "a person accused of murder could rebut the statutory presumption that he committed the offense with 'malice aforethought' by proving that he acted in the heat of passion on sudden provocation." *Patterson* v. *New York*, supra, 200–201.

The court in *Patterson* rejected the defendant's claim, relying on a line of cases in which the court had held that, once the state has met its burden of proving all elements of the crime beyond a reasonable doubt, it is not unconstitutional to require the defendant to prove an affirmative defense, such as insanity. Id., 203–205. The court stated that "[t]he [d]ue [p]rocess [c]lause . . . does not put New York to the choice of abandoning those defenses or undertaking to disprove their existence in order to convict of a crime which otherwise is within its constitutional powers to sanction by substantial punishment." Id., 207–208. If the state chooses to recognize a mitigating circumstance, it is not required "to prove its nonexistence in each case in which the fact is put in issue, if in its judgment this would be too cumbersome, too expensive, and too inaccurate." Id., 209. Moreover, "placing . . . the burden of [proving a

mitigating factor] on the defense, with a lower threshold . . . is fair because of the defendant's knowledge or access to the evidence other than his own on the issue. To require the prosecution to negative the element of mitigating circumstances is generally unfair . . . ." (Internal quotation marks omitted.) Id., 212 n.13.

The United States Supreme Court recognized that this conclusion could "permit state legislatures to reallocate burdens of proof by labeling as affirmative defenses at least some elements of the crimes now defined in their statutes," and warned that "there are obviously constitutional limits beyond which the [s]tates may not go in this regard." Id., 210. For example, legislatures constitutionally could not "declare an individual guilty or presumptively guilty of a crime" or "validly command that the finding of an indictment, or mere proof of the identity of the accused, should create a presumption of the existence of all the facts essential to guilt." (Internal quotation marks omitted.) Id. The New York law, however, did not violate those constitutional limits.

The court in *Patterson* also concluded that *Mullaney* did not require a different result. Id., 212–16. Under the Maine murder statute at issue in *Mullaney*, "malice, in the sense of the absence of provocation, was part of the definition of that crime," as the statute had been construed by the Maine Supreme Judicial Court. Id., 215–16. "Yet malice, i.e., lack of provocation, was *presumed* and could be rebutted by the defendant only by proving by a preponderance of the evidence that he acted with heat of passion upon sudden provocation." (Emphasis added.) Id., 216. Thus, *Mullaney* merely stood for the proposition that, *once the state had chosen to treat malice as an element of the crime of murder*, and to punish murder more severely than intentional

killing without malice, malice could not be presumed.[13] It did not stand for the proposition that the state constitutionally was required to treat malice as an element of murder. In *Patterson*, unlike *Mullaney*, no element of the offense had been presumed or implied against the defendant. Id.

In *McMillan* v. *Pennsylvania*, supra, 477 U.S. 79, the United States Supreme Court considered the constitutionality of a Pennsylvania statute providing that "anyone convicted of certain enumerated felonies is subject to a mandatory minimum sentence of five years' imprisonment if the sentencing judge finds, by a preponderance of the evidence, that the person 'visibly possessed a firearm' during the commission of the offense." Id., 81. The defendant contended that visible possession of a firearm was " 'really' an element of the offenses for which they [were] being punished [and] that Pennsylvania [had] in effect defined a new set of upgraded felonies . . . ." Id., 88. The court recognized that it had indicated in *Patterson* that "in certain limited circumstances . . . [the] reasonable-doubt requirement applies to facts not formally identified as elements of the offense charged." Id., 86. It concluded, however, that, "[w]hile we have never attempted to define precisely the constitutional limits noted in *Patterson*, i.e., the extent to which due

---

[13] A number of commentators have recognized that *Mullaney* is susceptible to a broader reading. See, e.g., J. Jeffries & P. Stephan, "Defenses, Presumptions, and Burden of Proof in the Criminal Law," 88 Yale L.J. 1325, 1339 (1979) ("*Mullaney* could be read as rejecting outright the largely artificial distinction between elements of the offense and other kinds of facts relevant to the imposition or grade of penal liability"). It is clear, however, that, to the extent that *Mullaney* can be read as requiring the states to treat *any* fact relevant to the severity of punishment as an element of the crime, it was overruled by *Patterson*. See id., 1342–43 ("the general understanding of the [due process requirement that the state prove the crime beyond a reasonable doubt] after *Patterson* is just what it was before *Mullaney*: a state must prove beyond a reasonable doubt those facts that formally define the crime charged but not those facts that establish a defense or a mitigation of liability").

process forbids the reallocation or reduction of burdens of proof in criminal cases . . . [the Pennsylvania statute] does not exceed those limits." Id. This was because the statute created no presumption against the defendant and did not relieve the prosecution of its burden of proving that the defendant was guilty of the underlying crime. Id., 87. In addition, the statute "neither alter[ed] the maximum penalty for the crime committed nor create[d] a separate offense calling for a separate penalty . . . ." Id., 87–88. Rather, the statute "simply took one factor that has always been considered by sentencing courts to bear on punishment—the instrumentality used in committing a violent felony—and dictated the precise weight to be given that factor if the instrumentality is a firearm." Id., 89–90. The court concluded that "the specter . . . of [s]tates restructuring existing crimes in order to 'evade' the [reasonable doubt requirement] just [did] not appear in this case." Id., 89. Thus, the court "reject[ed] the view that anything in the [d]ue [p]rocess [c]lause bars [s]tates from making changes in their criminal law that have the effect of making it easier for the prosecution to obtain convictions. From the vantage point of the [c]onstitution, a change in law favorable to defendants is not necessarily good, nor is an innovation favorable to the prosecution necessarily bad." (Internal quotation marks omitted.) Id., 89 n.5.

Having reviewed these cases, it is apparent to us that *Apprendi* did not change the constitutional landscape and that the holdings of *Mullaney, Patterson, McMillan* and *Apprendi* can be readily reconciled. First, under *Mullaney*, if a state chooses to treat a fact as an element of an offense, the state must prove that fact beyond a reasonable doubt, even if the state constitutionally could have treated the fact as an affirmative defense. See *Patterson* v. *New York*, supra, 432 U.S. 215. Second, under *Patterson*, if a state chooses to recognize a mitigating circumstance as an affirmative defense, it is not

required "to prove its nonexistence in each case in which the fact is put in issue, if in its judgment this would be too cumbersome, too expensive, and too inaccurate." Id., 209. There are, however, "constitutional limits beyond which the [s]tates may not go in this regard." Id., 210. For example, a state constitutionally could not treat the fact that the defendant did not commit any of the conduct of which he is accused as an affirmative defense.[14] See id., 215–16. Third, under *McMillan*, a fact that exposes the defendant to a mandatory minimum sentence *within* the range allowed by the jury's verdict need not be found by the jury beyond a reasonable doubt. *McMillan* v. *Pennsylvania*, supra, 477 U.S. 86. Fourth, under *Apprendi*, if a fact allows the sentencing court to impose a punishment *exceeding* the range authorized by the jury's verdict, that fact has the character of an element despite its label as a sentence enhancement.[15] *Apprendi* v. *New Jersey*, supra, 530 U.S. 476.

---

[14] One commentator has suggested that, as a constitutional minimum, a criminal offense must have both an actus reus element and a mens rea element, and, together, these elements must justify the imposition of penal sanctions. See J. Jeffries & P. Stephan, "Defenses, Presumptions, and Burden of Proof in the Criminal Law," 88 Yale L.J. 1325, 1370–79 (1979).

[15] The dissent in *Apprendi* argued that the invalidation of the New Jersey statute at issue in that case was a "meaningless formalism" because the state could simply impose a fifty year maximum sentence for all crimes and give sentencing courts discretion to impose lower sentences within that range or it could allow the jury to presume certain aggravating factors and place the burden on the defendant to disprove them. *Apprendi* v. *New Jersey*, supra, 530 U.S. 539 (O'Connor, J., dissenting). The majority agreed that, under its decision, the primary check on such a harsh legislative action would be the political process. Id., 491 n.16 (majority opinion). The majority also noted that, under *Patterson*, there might be constitutional limits on the state's ability to restructure aggravating factors as affirmative defenses. Id. The court in no way suggested, however, that *any* fact that affected the severity of the punishment must be proved beyond a reasonable doubt, including the absence of a mitigating factor, or that its decision to the contrary in *Patterson* had been incorrect. It is clear, therefore, that *Apprendi*'s prohibition on relabeling facts that could be treated as elements as something else applies solely to sentence enhancement provisions that increase the range of punishment beyond that authorized by the jury's

With these principles in mind, we turn to the defendant's claim in the present case that placing the burden on the defendant to prove by a preponderance of the evidence a fact—drug dependency—that affects the severity of his punishment under § 21a-278 (b) is unconstitutional. We disagree. This court has concluded that proof of drug dependency exempts a defendant from § 21a-278 (b). See *State* v. *Hart*, supra, 221 Conn. 608. The statute therefore effectively functions as an affirmative defense. See id., 611; *State* v. *Walker*, 90 Conn. App. 737, 742, 881 A.2d 406 (2005) ("the reference to a lack of drug dependency in § 21a-278 [b] operates as an affirmative defense to reduce the maximum sentence allowed by the statute"), cert. denied, 275 Conn. 930, 883 A.2d 1252 (2005). The defendant has not cited, and our research has not revealed, any authority for the proposition that drug dependency is the type of fact that constitutionally may not be treated as an affirmative defense under *Patterson* v. *New York*, supra, 432 U.S. 210. Indeed, the defendant conceded in his reply brief and at oral argument before this court that that is not the case. Accordingly, the statute falls squarely within the holding of *Patterson* that the states constitutionally may treat mitigating circumstances as affirmative defenses. Id., 209. We conclude, therefore, that placing the burden on the defendant to prove drug dependency under the statute is constitutional.

In support of his claim to the contrary, the defendant contends that, although the legislature constitutionally *could have* treated drug dependency as an affirmative defense under both *Patterson* and *Apprendi*, because the legislature chose to treat the absence of drug dependency as an aggravating factor under § 21a-278 (b), the

verdict, and did not overrule the conclusion in *Patterson* that the states constitutionally may "reallocate burdens of proof by labeling as affirmative defenses at least some elements of the crimes now defined in their statutes." *Patterson* v. *New York*, supra, 432 U.S. 210.

state must prove that fact beyond a reasonable doubt. He argues that, because the elements of §§ 21a-277 (a) and 21a-278 (b) are identical, but the punishment for a violation of § 21a-278 (b) is more severe, the absence of drug dependency increases the range of punishment to which the accused is exposed under § 21a-277 (a). He also notes that, under *Apprendi*, "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." (Internal quotation marks omitted.) *Apprendi* v. *New Jersey*, supra, 530 U.S. 476. Accordingly, he argues, even though the legislature *could have* structured the statutes in such a way that drug dependency was an affirmative defense, the form of the statute requires this court to construe the absence of drug dependency as an aggravating factor that must be treated as an element of the offense and proved by the state beyond a reasonable doubt.

We disagree. As construed by this court in *State* v. *Januszewski*, supra, 182 Conn. 162–69, and *State* v. *Hart*, supra, 221 Conn. 607–11, the absence of drug dependency does not increase the penalty for the conduct prohibited by § 21a-277 (a). Rather, drug dependency is an affirmative defense to charges that the defendant engaged in the conduct prohibited by § 21a-278 (b), which happens to be the same as the conduct that is prohibited by § 21a-277 (a). In other words, it is not the absence of drug dependency that increases the range of punishment to which the accused is exposed under § 21a-277 (a), but rather, it is the presence of drug dependency that decreases the range of punishment to which the accused is exposed under § 21a-278 (b). We recognize that this distinction is formalistic. Formal distinctions, however, can be constitutionally significant. Compare *Mullaney* v. *Wilbur*, supra, 421 U.S. 698, 704 (when state chooses to treat absence of heat of

passion on provocation as element of murder, state is required to prove it beyond reasonable doubt) with *Patterson* v. *New York*, supra, 432 U.S. 209 (when state chooses to treat extreme emotional disturbance as affirmative defense, state constitutionally may place burden of proving it on defendant). We also recognize that it may be unusual, or even odd, for a state to create two separate crimes with identical elements, but with different penalties, because one statute provides for an affirmative defense that the other does not. As long as the *substance* of an affirmative defense does not run afoul of the constitutional limits discussed in *Patterson*, however, there are no constitutional limitations on the freedom of the states to structure their criminal statutes as they see fit. See *Apprendi* v. *New Jersey*, supra, 530 U.S. 491 n.16 (primary check on state's freedom to restructure criminal code to place burden of proof on defendant is political process, subject to constitutional limitations discussed in *Patterson* v. *New York*, supra, 210); cf. *McMillan* v. *Pennsylvania*, supra, 477 U.S. 90 (federal system demands "[t]olerance for a spectrum of state procedures dealing with a common problem of law enforcement" [internal quotation marks omitted]); *McMillan* v. *Pennsylvania*, supra, 90 ("[t]hat Pennsylvania's particular approach [of treating a fact that could be treated as an element as a sentencing factor] has been adopted in few other [s]tates does not render Pennsylvania's choice unconstitutional").

This court's determination that drug dependency is an affirmative defense to charges under § 21a-278 (b), and is not an element of the offense or an aggravating factor, is dispositive for these purposes. See, e.g., *Ring* v. *Arizona*, supra, 536 U.S. 603 (highest state court's construction of state's own law is authoritative); *Mullaney* v. *Wilbur*, supra, 421 U.S. 691 ("state courts are the ultimate expositors of state law . . . and [the United States Supreme Court is] bound by their con-

structions except in extreme circumstances" [citations omitted]). We conclude, therefore, that it is not unconstitutional to require the defendant to prove his drug dependency by a preponderance of the evidence under §§ 21a-278 (b) and 21a-269.

III

We next address the defendant's claim that the trial court could not reasonably have found that he was not drug-dependent, as that term is defined in § 21a-240 (18),[16] at the time that he committed the offenses. We agree.

The following additional facts are relevant to our resolution of this claim. At trial, the defendant's mother, Emma Ray, testified that the defendant almost always had lived with her, except when he was incarcerated or receiving inpatient treatment for drug addiction. He had received such treatment once in the 1980's and once in the late 1990's. The defendant was living with his mother at the time of his arrest in November, 2001. During the three to four months prior to his arrest, Ray had observed that there were times when the defendant had appeared to be under the influence of drugs. When she asked him about it, however, he denied it. On cross-examination, Ray testified that from September through November, 2001, she had not seen the defendant ingest any kind of narcotics.

James O'Connor, a court liaison officer at the Liberation House drug rehabilitation clinic in Stamford (clinic), testified that he had conducted an intake interview and assessment of the defendant in November, 1998, after the defendant had been referred to the clinic's inpatient program. The defendant indicated at that

---

[16] General Statutes § 21a-240 (18) provides: " 'Drug dependence' means a psychoactive substance dependence on drugs as that condition is defined in the most recent edition of the 'Diagnostic and Statistical Manual of Mental Disorders' of the American Psychiatric Association . . . ."

time that he was abusing alcohol and marijuana and that he previously had abused cocaine, hallucinogens and phencyclidine, also known as PCP. The "diagnostic impressions" portion of the intake screening report prepared by O'Connor indicated that the defendant was dependent on alcohol and cannabis. O'Connor recommended that the defendant receive inpatient treatment because he did not have the independent ability to discontinue his use of drugs. The defendant was admitted to inpatient treatment in March, 1999. At that time, he indicated that he currently was using marijuana, alcohol and PCP. During his inpatient treatment, the defendant was unable to develop any insight as to why he was abusing drugs. The defendant was released in July, 1999, at which time he continued outpatient treatment.

The defendant was evaluated by the clinic again in October, 2000. At that time, he was using PCP and marijuana and was diagnosed as dependent on alcohol and cocaine. He was in denial as to his dependence on drugs and continued to state that he did not need treatment even though he was continually using drugs and getting into legal trouble. The defendant received outpatient treatment for his dependence from October, 2000, through April, 2001, during which time he tested positive for cocaine and PCP use on four occasions. Despite the positive tests, the defendant denied that he was using drugs. He was discharged from the clinic on April 24, 2001, because he had tested positive for cocaine use on April 10 and 16, 2001, and had refused the recommended inpatient treatment. O'Connor testified that, without treatment, it was "more than likely" that the defendant would continue to use cocaine after his discharge.

O'Connor testified on cross-examination that, on the basis of his personal knowledge, he could not say conclusively that the defendant was drug-dependent from the time of his discharge on April 24, 2001, to the time

that he committed the offenses in the fall of 2001. O'Connor also testified that people frequently go to drug treatment programs in order to avoid incarceration and that, when O'Connor first met the defendant, he was facing jail time for drug offenses. O'Connor further testified that the defendant's treatment records showed that he enjoyed playing pool, carving, painting and sewing, that, if the defendant had had a serious drug abuse problem, he likely would not have been able to engage in those activities, but that drug abuse and engaging in those activities were not necessarily mutually exclusive.

Tina Klem, the director of outpatient services at the clinic, testified that there is a clinical difference between abuse of cocaine and cocaine addiction. Cocaine addiction involves physical and psychological dependence on the drug with accompanying impairment of social and occupational functioning. The seven criteria for drug addiction are set forth in the Diagnostic and Statistical Manual of Mental Disorders (4th Ed. 1994) (DSM IV). A person who satisfies three of the seven criteria is diagnosed as drug-dependent. Klem testified that the defendant met four of the seven criteria when he was discharged from treatment in April, 2001. Specifically, the defendant was using increasing amounts of drugs, had been using drugs for a long period of time, had unsuccessfully tried to reduce his use of drugs and had reduced his social, occupational and recreational activities as the result of his drug use. She also testified that a diagnosis of drug dependency is required to obtain a referral to the clinic's inpatient program. A diagnosis of drug dependency is not inconsistent with periods of abstinence. Klem testified that drug addicts frequently relapse after a successful period of abstinence and that it can take up to six separate periods of treatments before patients achieve sobriety. She stated that, "once you have a dependency diagnosis,

you're dependent and you're either still using or you're in remission."

On cross-examination, Klem testified that the defendant had held two part-time jobs when he was discharged from treatment. Although impaired ability to maintain employment is one of the DSM IV criteria for drug dependency, maintaining employment is not necessarily inconsistent with drug dependency. Klem also testified that the defendant was on probation for selling narcotics during his treatment in 2000 and 2001, and that avoiding jail could motivate someone to seek drug treatment. She further testified that nine of the thirteen urine samples that the defendant had submitted during his last treatment period tested negative for drug use.

In its rebuttal case, the state presented Kripinski's testimony that, during the transactions with the defendant, he had never seen the defendant use drugs. Hohn, who had observed all of the transactions between Kripinski and the defendant, testified that the defendant had appeared to be impaired during only one of the transactions, on October 23, 2001, when the defendant had told Kripinski that he had been drinking all day, not that he had used drugs. Another officer testified that he had never seen the defendant with any drug use paraphernalia and that he had not found any such paraphernalia at the defendant's residence when he was arrested. The defendant's residence did, however, contain the type of plastic bags commonly used for drug packaging and two used bags with cocaine residue, which was more consistent with the sale of cocaine than with its use. Lance Williams, the bail commissioner who had completed the intake report for the defendant after his arrest on November 16, 2001, testified that the defendant had said "no" when asked whether he had any substance abuse problems.

The trial court found that, because the defendant had presented no evidence that he was drug-dependent at the time of the offenses, he had not met his burden of proof under § 21a-278 (b). In support of this finding, the court stated: "The mother was here to testify that she thought he was drug-dependent, but . . . the mother is the mother. [On cross-examination] she could [not] remember when. She had no idea. Plus there was no evidence for drug dependency from the defense because [the clinic employees testified about] April 16, the day that they threw him out and let him go. . . . He was in their minds drug-dependent, but they did not see him for six months. And to me that is no evidence."

Whether a defendant is a drug-dependent person as defined in § 21a-240 (18) is a question of fact. Cf. *State* v. *Raguseo*, 225 Conn. 114, 122, 622 A.2d 519 (1993) ("the ultimate determination of the presence or absence of [the affirmative defense of] extreme emotional disturbance [is] one of fact for the trier, aided by the expert testimony of both sides, but left to its own factual determinations" [internal quotation marks omitted]). "A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record." (Internal quotation marks omitted.) *State* v. *Kalphat*, 285 Conn. 367, 374, 939 A.2d 1165 (2008). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor

of the trial court's ruling."[17] (Internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 154–55, 920 A.2d 236 (2007).

Under §§ 21a-278 (b) and 21a-240 (18), the defendant was required to prove by a preponderance of the evidence that, at the time of the offenses, he had a "psychoactive substance dependence on drugs as that condition is defined in the most recent edition of the 'Diagnostic and Statistical Manual of Mental Disorders' of the American Psychiatric Association . . . ." General Statutes § 21a-240 (18). The trial court concluded that the defendant had produced "no evidence" to meet this burden. Thus, the court appears to have concluded that the defendant was required to produce direct evidence, such as precisely contemporaneous eyewitness reports or treatment records, that he was dependent on drugs at the time that he committed the offenses, and that a lengthy, unbroken history of drug dependency, even if established, simply was not probative on the issue. We disagree that § 21a-278 (b) requires such proof as a matter of law. We further conclude that the defendant presented overwhelming evidence that he was drug-dependent at the time of the offenses and that no reasonable fact finder could conclude that he had failed to meet his burden of proving drug dependency by a preponderance of the evidence. The evidence established that the defendant had been in and out of drug treatment since the 1980's and repeatedly had been diagnosed as drug-dependent, most recently in April,

---

[17] The defendant contends that we must determine in this case whether the inferences drawn by the trial court were "so unreasonable as to be unjustifiable." (Internal quotation marks omitted.) *State* v. *Copas*, 252 Conn. 318, 340, 746 A.2d 761 (2000). He further claims that this is a question of law subject to plenary review See *State* v. *Diaz*, 226 Conn. 514, 526 n.8, 628 A.2d 567 (1993) (whether particular inference drawn by fact finder is reasonable is legal determination). As a matter of law, however, an inference drawn by a fact finder is considered reasonable for purposes of appellate review unless it is clearly erroneous. See *id.*, 526 and n.8.

2001. The defendant met four of the seven DSM IV criteria for drug dependency at that time, when only three criteria are required to support a diagnosis of drug dependence.[18] The defendant's dependence on drugs was further evidenced by the fact that he had been unable to refrain from drug use even during treatment, and had been discharged unfavorably from treatment for that reason. In addition, Klem testified that, "once you have a dependency diagnosis, you're dependent," and O'Connor testified that it was "more than likely" that the defendant would continue his drug use after discharge.

Although the state elicited testimony that the defendant had been able to participate in recreational activities and, at least temporarily, to hold a job, neither that evidence, nor evidence that the defendant had denied that he was a drug abuser when he was arrested on November 16, 2001, was inconsistent with a diagnosis of drug dependence under the DSM IV. The defendant repeatedly and consistently had denied that he used or abused drugs, even when drug tests established conclusively that he had done so. Moreover, the testimony of the police officers that they had not observed the defendant using drugs during the transactions with Kripinski and had not found drug use paraphernalia on his person or at his residence at the time of his arrest had little if any bearing on the question of whether he

[18] We recognize that the state, during cross-examination of Klem, attempted to establish that the DSM IV criteria for drug addiction are somewhat subjective and that the defendant had been inconsistent in his reports about his drug use. The evidence that the clinic had determined that the defendant had met the criteria was uncontroverted, however, and the state has not suggested that the clinic had any motive to render a false positive diagnosis. The mere fact that the criteria are subjective, without any evidence of bias, incompetence in applying the criteria or receipt of false information about the subject of the diagnosis, does not provide a reason to reject the diagnosis. The general reliability of the DSM IV criteria in determining drug dependency is presumed under § 21a-240 (18). See footnote 16 of this opinion.

was drug-dependent. The fact that the defendant was not using drugs on a street corner does not mean that he was not using them anywhere. Finally, it defies common sense and experience to conclude that a person who had been abusing drugs for more than a decade, and who had been discharged from treatment a mere five months earlier because of his inability to refrain from using them, was storing and selling the drugs that he previously had abused, but nevertheless was not actually using them.

In summary, we conclude that the trial court applied an improper evidentiary standard in determining whether the defendant was drug-dependent, as defined in § 21a-240 (18). Although this conclusion ordinarily would require a remand to the trial court so that the court may apply the correct standard, we conclude that, on the basis of the evidence presented, no reasonable fact finder could conclude that the defendant was not drug-dependent at the time of his discharge from treatment in April, 2001, or that, after years of dependence on drugs, the defendant finally had managed to conquer his addiction at some point during the five months between that date and the date of the first offense. Accordingly, we conclude that, as a matter of law, the defendant met his burden of proving that he was a drug-dependent person under § 21a-278 (b).

Because we have concluded that the trial court improperly found that the defendant was not drug-dependent, the defendant's convictions under § 21a-278 (b) must be reversed and we need not address the defendant's claim that the sentence imposed on him was illegal and must be corrected.[19]

---

[19] The defendant was not charged under § 21a-277 (a) as a lesser included offense of § 21a-278 (b), and neither the defendant nor the state requested that the trial court consider that lesser included offense. Moreover, the state has made no claim on appeal that, if the defendant's conviction under § 21a-278 (b) is reversed on the ground that he met his burden of proving that he is a drug-dependent person, the case should be remanded with direction that the trial court render a judgment of conviction under § 21a-277 (a).

The judgment is reversed with respect to the defendant's conviction of five counts of sale of narcotics by a person who is not drug-dependent and the case is remanded to the trial court with direction to render judgment of acquittal on those charges only and to resentence the defendant on the remaining charges; the judgments are affirmed in all other respects.

In this opinion VERTEFEUILLE and SCHALLER, Js., concurred.

KATZ, J., concurring in part and dissenting in part. The majority concludes that the conviction of the defendant, Quentin T. Ray, of five counts of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b)[1] was improper because,

Accordingly, we need not consider whether such an order would be appropriate. See *State* v. *Desimone*, 241 Conn. 439, 465 n.35, 696 A.2d 1235 (1997).

The dissent argues that we should address this issue and concludes that this court may order modification of the judgment to reflect a conviction of the lesser included offense, even though neither the state nor the defendant requested that the trial court consider the lesser included offense. We note that, although the dissent has cited a number of cases in which this court ordered the modification of a judgment of conviction to reflect a lesser included offense when we concluded that the trial court had applied an improper legal standard; see *State* v. *Greene*, 274 Conn. 134, 153–62, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006); *State* v. *McGann*, 199 Conn. 163, 177–79, 506 A.2d 109 (1986); it has cited no case in which this court has squarely concluded that it may order a modification of a judgment of conviction to reflect a lesser included offense when: (1) the conviction on the greater offense was reversed because the state had failed to prove all the elements of the offense beyond a reasonable doubt or the defendant had proved an affirmative defense by a preponderance of the evidence; and (2) the jury had not been instructed on the lesser included offense. Because the state has not asked this court to address that question in the present case, however, we leave it for another day.

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except

as a matter of law, he had met his burden of proving his drug dependence, as that term is defined in General Statutes § 21a-240 (18),[2] at the time that he committed the offenses. I agree with that determination, given the uncontroverted medical evidence of the defendant's lengthy, unbroken history of treatment for, and diagnosis of, drug dependence. I disagree, however, with the scope of the remand that this determination necessitates. The majority concludes that the trial court must reverse the defendant's conviction of violations of § 21a-278 and resentence him solely on the remaining offenses of which he had been convicted. Although the majority acknowledges that General Statutes § 21a-277 (b),[3] sale of narcotics, is a lesser included offense of § 21a-278—the only difference being the defendant's status as a person who is not drug-dependent in the greater offense[4]—it concludes that we need not con-

as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years . . . ."

[2] General Statutes § 21a-240 (18) provides: " 'Drug dependence' means a psychoactive substance dependence on drugs as that condition is defined in the most recent edition of the 'Diagnostic and Statistical Manual of Mental Disorders' of the American Psychiatric Association . . . ."

[3] General Statutes § 21a-277 (b) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with intent to sell or dispense, offers, gives or administers to another person any controlled substance, except a narcotic substance, or a hallucinogenic substance other than marijuana, except as authorized in this chapter, may, for the first offense, be fined not more than twenty-five thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned . . . ."

[4] The test governing lesser included offenses is well settled. For one offense to be included within another, it must not be "possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser . . . ." *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980); accord *State* v. *Greene*, 274 Conn. 134, 158, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006). This inquiry is governed by the cognate pleadings approach. *State* v. *Tomlin*, 266 Conn. 608, 618, 835 A.2d 12 (2003). "The cognate-pleadings approach . . . does not insist that the elements of the lesser offense be a subset of the higher offense. It is sufficient that the lesser offense have certain elements in common with the higher offense,

sider whether to direct the trial court to modify the judgment to reflect convictions of § 21a-277 (b) and to resentence the defendant in accordance therewith because neither party asked the trial court, as the finder of fact, to consider that lesser included offense, the state did not charge the defendant with violations of that lesser included offense and the state has not requested such an order in this appeal. I find the majority's rationale unpersuasive and would conclude that, because there is no undue prejudice to the defendant in the present case, it is in the interests of justice and judicial economy for the court to modify the judgment to reflect the fact finder's necessary findings that the defendant committed the lesser included offenses of § 21a-277 (b) beyond a reasonable doubt.

In *State* v. *Grant,* 177 Conn. 140, 147, 411 A.2d 917 (1979), this court first adopted the rule that it "may order the modification of an erroneous judgment where the evidence is insufficient to support an element of the offense stated in the verdict but where the evidence presented is sufficient to sustain a conviction for a lesser included offense." Although the court recognized that "[t]his power should be exercised only when it is clear that no undue prejudice will result to the accused"; (internal quotation marks omitted) id., 148; it determined that no such prejudice occurs if "[t]he defendant has had a fair adjudication of guilt on all the elements of the crime . . . ." Id. A defendant is deemed to have received such a fair adjudication when the crime "is a lesser included offense of the crime charged, and the [fact finder], under the circumstances of the case, could

which thereby makes it a cognate or allied offense even though it also has other elements not essential to the greater crime. [In addition], the relationship between the offenses is determined not by a comparison of statutory elements in the abstract, but by reference to the pleadings in the case. The key ordinarily is whether the allegations in the pleading charging the higher offense . . . include all of the elements of the lesser offense." (Internal quotation marks omitted.) Id.

have explicitly returned such a verdict [and] the defendant was aware of his potential liability for this crime." Id., 149; accord *State* v. *Saracino*, 178 Conn. 416, 421, 423 A.2d 102 (1979) ("[s]ince the jury could have explicitly returned . . . a verdict [of guilty of the lesser included offense of fourth degree larceny], the defendant was aware of her potential liability for this crime and would not now be prejudiced by modification of the judgment"). This court has explained that, "[i]n *State* v. *Grant,* supra, [147], and *State* v. *Saracino,* supra, [421], we held that even though the trial evidence did not support the defendant's conviction of the offense charged, we were free to modify the judgment to reflect a conviction of a lesser crime. We came to this conclusion because the evidence was sufficient to support a conviction of a lesser included offense on which the jury properly had been charged and the jury's verdict necessarily included a finding that the defendant was guilty of that lesser offense. See also *State* v. *Carpenter,* 214 Conn. 77, 85, 570 A.2d 203 (1990), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed. 2d 781 (1992); *State* v. *Scielzo,* 190 Conn. 191, 204–205, 460 A.2d 951 (1983); *State* v. *Coston,* 182 Conn. 430, 437, 438 A.2d 701 (1980)." *State* v. *Desimone,* 241 Conn. 439, 460 n.28, 696 A.2d 1235 (1997).

I recognize that most of the cases in which this court has ordered the modification of a judgment to reflect a conviction of a lesser included offense have involved circumstances wherein the jury had been instructed on that lesser included offense. We never have stated, however, that the absence of a jury instruction is an absolute bar to this court's ability to modify a judgment.[5]

[5] In this regard, I note that one of the decisions in which this court has concluded that it would not prejudice the defendant to reduce his conviction to a lesser included offense does not state whether the jury, through express instructions by the court, had been given the opportunity to consider the lesser included offense. See *State* v. *Edwards,* 201 Conn. 125, 133–34 n.6, 513 A.2d 669 (1986) ("While the evidence was insufficient to sustain the

Indeed, our modification of the judgment of conviction in *State* v. *Greene*, 274 Conn. 134, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006), undermines any such claim.

In *Greene*, a case in which the defendant had been charged with, inter alia, murder as an accessory, the trial court had granted the state's request to instruct the jury on what it had considered to be the lesser included offense of manslaughter in the first degree with a firearm as an accessory. Id., 154. On appeal, we concluded that the instruction was improper because manslaughter in the first degree with a firearm was not a lesser included offense of murder, as charged in the information. Id., 158–60. In rejecting the defendant's contention that the appropriate remedy for this constitutional instructional error was a judgment of acquittal, we determined that it would be proper to modify the judgment of conviction to manslaughter in the first degree. Id., 160–62. In doing so, we recognized that "[t]his court [previously] has modified a judgment of conviction after reversal, if the record establishes that the jury necessarily found, beyond a reasonable doubt, all of the essential elements required to convict the

conviction on the second count of the substitute information charging the crime of accessory to robbery in the second degree, it did suffice to sustain a conviction for the lesser included offense of accessory to robbery in the third degree. The jury's verdict on the second count necessarily determined that the state had proven all the elements of accessory to robbery in the third degree beyond a reasonable doubt upon which the trial court instructed the jury. Under the circumstances of this case, the reduction of the defendant's conviction on the second count to the lesser included offense cannot prejudice the defendant."). A careful review of the record and briefs in the present case does disclose a statement in the defendant's brief to this court suggesting that the jury did receive an instruction on the lesser offense. Presumably, however, if a jury instruction on the lesser included offense is a necessary predicate to modifying a judgment from the greater offense to a lesser offense, this court's opinion would have reflected that fact expressly. Therefore, in the absence of any such reference, I would conclude the opposite.

defendant of a lesser included offense." Id., 160. We reasoned in *Greene* that, in the case before us, "[b]efore the jury could find the defendant guilty of manslaughter in the first degree with a firearm, the jury necessarily must have found the defendant guilty of manslaughter in the first degree. . . . Therefore, the trial court's improper instruction could not have affected the jury's finding that the defendant was guilty, beyond a reasonable doubt, of the essential elements of manslaughter in the first degree . . . ." (Citations omitted.) Id., 161. Significantly, although the trial court had instructed the jury on manslaughter in the first degree with a firearm, it had not instructed the jury that it could find the defendant guilty of first degree manslaughter. See id., 155. Nevertheless, we did not conclude that the jury's inability to return *explicitly* a verdict of guilty of manslaughter in the first degree precluded us from modifying the judgment by directing the trial court to enter a judgment of conviction on that crime. Accord *State* v. *Coston*, supra, 182 Conn. 437 (reversing for insufficient evidence conviction for attempted robbery in first degree and remanding with direction to modify judgment to reflect conviction of lesser included offense of attempted larceny in fourth degree); see also *State* v. *Ortiz*, 71 Conn. App. 865, 878, 804 A.2d 937 ("even in the absence of a request at trial for a jury instruction on a lesser included offense, an appellate court may invoke the [doctrine enunciated in *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980)][6] where the trial court record justifies its application and order that the judgment be modified to reflect a conviction on the lesser offense and that the defendant be sentenced

---

[6] In *State* v. *Whistnant*, supra, 179 Conn. 588, this court held that a jury properly may be instructed on a lesser included offense when, inter alia, the evidence could justify the conviction of the lesser offense and the proof on elements that differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant not guilty of the greater offense but guilty of the lesser offense.

thereon" [internal quotation marks omitted]), cert. denied, 261 Conn. 942, 808 A.2d 1136 (2002).

Embodied in *Greene* is a recognition that "whe[n] one or more offenses are lesser than and included within the crime charged, notice of the crime charged includes notice of all lesser included offenses. . . . This notice permits each party to prepare a case properly, each cognizant of its burden of proof." (Internal quotation marks omitted.) *State* v. *Tomlin*, 266 Conn. 608, 617, 835 A.2d 12 (2003).[7] In addition to this guarantee of notice, the jury's verdict of guilty on the greater offense guarantees that it found the defendant guilty of all of the elements of the lesser included offense. See *State* v. *Carpenter*, supra, 214 Conn. 85 ("[b]ecause the jury's verdict necessarily includes a determination that, absent a specific intent, all the elements of [General Statutes] § 53a-55 [a] [3] have been proven beyond a reasonable doubt, the defendant would not be prejudiced by a modification of the judgment to reflect a conviction of that charge"). As long as such notice and jury findings exist, there is no constitutional impediment to the exercise of our power to reverse a conviction while at the same time ordering the entry of judgment on a lesser included offense. See *State* v. *Edwards*, 201 Conn. 125, 134 n.6, 513 A.2d 669 (1986) ("[t]he constitutionality of the practice [of reversing a conviction while at the same time ordering the entry of judgment on a lesser included offense] has never seriously been questioned" [internal quotation marks omitted]); see also *Rutledge* v. *United States*, 517 U.S.

---

[7] In fact, we have relied on the same notice considerations to conclude that a defendant's waiver of his constitutional rights to a jury trial and his court trial election as to the greater offense were valid as to any lesser included offenses. See *State* v. *Williams*, 205 Conn. 456, 466, 534 A.2d 230 (1987) (defendant's waiver of right to jury trial for burglary in first degree constituted waiver for burglary in second degree as charged in substitute information "because a defendant is deemed to be on notice that a charge of the more serious offense encompasses the lesser offenses").

292, 305 n.15, 116 S. Ct. 1241, 134 L. Ed. 2d 419 (1996) (citing with approval four-pronged test announced by Court of Appeals for District of Columbia, which does not require jury to be instructed on lesser included offense, but, rather, provides that judgment can be modified if it can be shown "[1] that the evidence adduced at trial fails to support one or more elements of the crime of which [the accused] was convicted, [2] that such evidence sufficiently sustains all the elements of another offense, [3] that the latter is a lesser included offense of the former, and [4] that no undue prejudice will result to the accused" [internal quotation marks omitted]).

Such modifications are not limited to jury trials. In *State* v. *McGann*, 199 Conn. 163, 506 A.2d 109 (1986), a case tried to the court, as in the present case, this court modified a judgment of conviction from murder for hire, a capital felony, to murder; id., 179; because the latter crime was a lesser included offense and "the defendant could not have committed murder for hire without also committing intentional murder . . . ." (Internal quotation marks omitted.) Id., 178. The court modified the judgment of conviction because it concluded that "[t]he failure of the state to prove the additional element of a hiring to commit the murder leaves standing the finding . . . that the defendant did murder [the victim]." Id., 178–79. Because *McGann* involved a bench trial, there were no jury instructions that might have given the defendant *express* notice of his criminal liability on the lesser included offense. There is also no indication in this court's decision in *McGann* that the state had requested this court to modify the judgment. Nevertheless, we noted that "[o]ur conclusion that the judgment of the trial court was erroneous in convicting the defendant of a capital felony [did] not require a remand for a new trial." Id., 178.

Indeed, it is well settled that, even in the absence of a request from either party, the trial court may, sua sponte, submit a lesser included offense to the jury if the evidence supports such a charge. *State* v. *Rodriguez*, 180 Conn. 382, 408, 429 A.2d 919 (1980); *State* v. *Horne*, 19 Conn. App. 111, 145, 562 A.2d 43 (1989), rev'd on other grounds, 215 Conn. 538, 577 A.2d 694 (1990); see also *State* v. *Jacobowitz*, 194 Conn. 408, 412–13, 480 A.2d 557 (1984) (implicitly recognizing court's discretion in concluding that trial court properly could have declined to instruct jury on lesser included offense in absence of request); *State* v. *Whistnant*, supra, 179 Conn. 581–82 (noting that question of whether due process clause of fourteenth amendment *requires* trial court to instruct jury, sua sponte, on lesser included offense has not been resolved by federal courts). Thus, it is clear that the parties' conduct vis-á-vis jury instructions does not control exclusively whether a conviction may lie for a lesser included offense. The trial court's authority in this regard is rooted in the interests of justice, so that "the jury should not be . . . forced by its verdict to choose only between the offense with the [greater culpability] and acquittal." *State* v. *Asherman*, 193 Conn. 695, 731–32, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). Similarly, the interests of justice would not be served by precluding an appellate court from ordering modification of the judgment to a conviction of a lesser offense simply because the parties did not request the trial court to provide such an instruction.

It is also significant that we have held that a jury cannot consider an instruction on a lesser included offense unless it first has determined that the defendant is not guilty of the greater offense. See *State* v. *Sawyer*, 227 Conn. 566, 579, 630 A.2d 1064 (1993) ("to ensure that the charged offense has been determined by unanimous agreement, the court must direct the jury to reach a

unanimous decision on the issue of guilt or innocence of the charged offense before going on to consider the lesser included offenses"); id., 585–87 (same, citing "acquittal first" rule). Therefore, in the present case, even if the trial court, as the fact finder, had been requested to consider the lesser included offense, once it found the defendant guilty of the greater offense, it would not have reached the lesser offense. Accordingly, it makes no sense to conclude that, in a case in which the evidence would have rendered it proper to provide an instruction on the lesser offense; see footnote 6 of this concurring and dissenting opinion; the absence of such a request precludes modification of the judgment.

With respect to the majority's concern that the state did not charge the defendant with violations of § 21a-277, it is well settled that the state's failure to charge a lesser included offense does not preclude the submission of that charge to the jury. See *State* v. *Smith*, 185 Conn. 63, 77, 441 A.2d 84 (1981); *State* v. *Maselli*, 182 Conn. 66, 72, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981); *State* v. *Rodriguez*, supra, 180 Conn. 405; see also *United States* v. *Dhinsa*, 243 F.3d 635, 676 (2d Cir.), cert. denied, 534 U.S. 897, 122 S. Ct. 219, 151 L. Ed. 2d 156 (2001); *United States* v. *Martel*, 792 F.2d 630, 638 (7th Cir. 1986). We have relied on this rationale to conclude that, even when a defendant has not been charged with the lesser included offense, and the jury has not rendered a finding on the lesser included offense because of its finding of guilty on the greater offense, this court may order a modification of a defective judgment on the greater to the lesser. See *State* v. *Carpenter*, supra, 214 Conn. 85. Therefore, the state's failure to charge the defendant with the lesser included offense should not bar modification of the judgment of conviction.

The majority's final reason for concluding that we need not consider whether to modify the judgment to

conviction of the lesser offense—that the state did not ask *this* court to do so—fails to consider the fact that it is highly unusual, if not unprecedented, for this court to hold that, as a matter of law, the fact finder improperly concluded that the defendant had failed to meet his burden of proving his affirmative defense. Thus, we should not presume that the state intentionally declined to ask for modification. Indeed, the absence of such a request has not been an impediment in other cases. See, e.g., *State* v. *Edwards*, supra, 201 Conn. 125; *State* v. *Coston*, supra, 182 Conn. 430. Moreover, given that the state undoubtedly hereafter will make such a request in response to the majority's invitation, interests of judicial economy certainly counsel in favor of modification.

In sum, in the present case, as in all of the aforementioned cases in which we have observed that the jury's verdict of guilty of the greater offense required the jury first to find beyond a reasonable doubt that all the elements of the lesser offense had been proven, the court's finding as to the violations of § 21a-278 (b), as charged, necessarily was predicated on its finding that the defendant had committed a violation of § 21a-277 (b). The conclusions by the majority that, as a matter of law, "the defendant met his burden of proving that he was a drug-dependent person under § 21a-278 (b)" because, "on the basis of the evidence presented, no reasonable fact finder could conclude that the defendant was not drug-dependent at the time of his discharge from treatment in April, 2001, or that, after years of dependence on drugs, the defendant finally had managed to conquer his addiction at some point during the five months between that date and the date of the first offense," are highly unusual. The determination that the trial court should not upon remand modify the judgment to reflect conviction of the lesser included offenses of § 21a-277 (b) is remarkable.[8] There has been

---

[8] In *State* v. *Edwards*, supra, 201 Conn. 133 n.6, this court noted a long history of state and federal appellate courts exercising their power to reverse

no challenge on appeal to the trial court's finding that

a conviction while at the same time ordering the entry of judgment on a lesser included offense. See id., citing *United States* v. *Cobb*, 558 F.2d 486, 489 (8th Cir. 1977); *Austin* v. *United States*, 382 F.2d 129, 140–42 (D.C. Cir. 1967); *Luitze* v. *State*, 204 Wis. 78, 84, 234 N.W. 382 (1931). I am aware, however, that there is not consensus among the various jurisdictions that have considered the issue as to whether modification of a judgment to conviction of a lesser included offense is proper in the absence of a jury instruction on that lesser offense. Compare *United States* v. *Hunt*, 129 F.3d 739, 745–46 (5th Cir. 1997) (instruction not required but should be considered in determining whether modification of judgment unduly prejudicial to defendant), *United States* v. *Smith*, 13 F.3d 380, 383 (10th Cir. 1993) (no undue prejudice due to modification of judgment because possibility of instruction on lesser included offense existed throughout trial, and all elements were proven beyond reasonable doubt), *United States* v. *LaMartina*, 584 F.2d 764, 766–77 (holding that, although District Court erred in refusing to instruct on lesser included offense, sentence should be vacated and case remanded for sentencing on lesser included offense, as there was sufficient evidence to support lesser but not greater offense), cert. denied, 440 U.S. 928, 99 S. Ct. 1263, 59 L. Ed. 2d 483 (1979), *Shields* v. *State*, 722 So. 2d 584, 587 (Miss. 1998) ("lesser included offense need not be before the jury in order to apply the direct remand rule"), *State* v. *Farrad*, 164 N.J. 247, 266, 753 A.2d 648 (2000) (reversing case for new trial but noting that "guilty verdict may be molded to convict on a lesser-included offense even if the jury was not instructed on that offense if [1] [the] defendant has been given his day in court, [2] all the elements of the lesser included offense are contained in the more serious offense and [3] [the] defendant's guilt of the lesser included offense is implicit in, and part of, the jury verdict" [internal quotation marks omitted]), *State* v. *Briggs*, 787 A.2d 479, 486–87 (R.I. 2001) (approving sentencing remand when, although jury was not instructed on lesser offense, defendant's trial testimony constituted evidence meeting all elements of lesser included offense of larceny) and *State* v. *Garcia*, 146 Wash. App. 821, 830, 193 P.3d 181 (2008) (order to modify judgment to lesser included offense proper, even though state did not charge or request trial court, sitting as finder of fact, to consider lesser offense because lesser degree necessarily proved at trial and charge on greater offense gave defendant sufficient notice) with *United States* v. *Dhinsa*, supra, 243 F.3d 676 (because there was no jury instruction, court could not grant government's request to modify judgment of conviction), cert. denied, 534 U.S. 897, 122 S. Ct. 219, 151 L. Ed. 2d 156 (2001), *United States* v. *Dinkane*, 17 F.3d 1192, 1198 (9th Cir. 1994) (jury instruction on lesser included offense required to modify judgment), *Ex parte Roberts*, 662 So. 2d 229, 232 (Ala. 1995) ("[i]t is well established that if an appellate court holds the evidence insufficient to support a jury's guilty verdict on a greater offense, but finds the evidence sufficient to support a conviction on a lesser included offense, it may enter a judgment on that lesser included offense, provided that the jury was

the defendant sold narcotics on the dates alleged in the

charged on the lesser included offense"), *State* v. *Villa*, 136 N.M. 367, 368, 98 P.3d 1017 (2004) ("conviction of an offense not presented to the jury would deprive the defendant of notice and an opportunity to defend against that charge and would be inconsistent with New Mexico law regarding jury instructions and preservation of error"), *State* v. *Brown*, 360 S.C. 581, 594, 602 S.E.2d 392 (2004) (jury must be instructed on lesser included offense in order to remand for sentencing on that crime) and *Collier* v. *State*, 999 S.W.2d 779, 782 (Tex. Crim. App. 1999) (appellate court may reform judgment to conviction of lesser included offense only if [1] court finds evidence is insufficient to support conviction of charged offense but sufficient to support conviction on lesser included offense and [2] either jury was instructed on lesser included offense or one of parties asked for but was denied such instruction). In my view, the rationale provided in those jurisdictions holding that modification of a judgment is improper in the absence of an instruction on the lesser offense is unpersuasive. See *United States* v. *Dhinsa*, supra, 674, 676 (reasoning that rule of criminal procedure providing that "[t]he defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense . . . applies to the jury's—rather than a reviewing court's—finding of guilt on a lesser-included offense" [internal quotation marks omitted]); see *United States* v. *Vasquez-Chan*, 978 F.2d 546, 554 n.5 (9th Cir. 1992) (citing cases in which other courts have modified judgment under facts wherein instruction on lesser offense had been given and relying on proposition that acquittal of greater offense necessarily means acquittal of lesser offense to conclude that "[i]f no such lesser-included offense instruction is given, the acquittal [whether at trial or on appeal] on the greater offense precludes a conviction on a lesser offense"); *State* v. *Brown*, supra, 594–97 (citing as reasons: [1] "appellate court does not sit as a [fact finder] in a criminal case and should avoid resolving cases in a manner which appears to place the appellate court in the jury box"; [2] "this view preserves the important distinction between an appellate determination [that] the record contains sufficient evidence to support a guilty verdict and a jury determination [that] the [s]tate proved its case beyond a reasonable doubt"; [3] "[when a jury instruction on the lesser has been given], it can be said with some degree of certainty that a [sentencing remand] is but effecting the will of the fact finder within the limitations imposed by law; and, that the appellate court is simply passing on the sufficiency of the implied verdict . . . [but when] no instruction at all has been offered on the lesser offense, second guessing the jury becomes far more speculative"; [4] "when the jury could have explicitly returned a verdict on the lesser offense, the defendant is well aware of his potential liability for the lesser offense and usually will not be prejudiced by the modification of the judgment from the greater to the lesser offense"; [5] "adopting a practice of remanding for sentencing on a lesser included offense when that offense has not been submitted to the jury may prompt the [s]tate

information. The defendant has not raised any issue, nor can I surmise any, that would suggest that, as a result of the failure to charge him with or request the court to consider the lesser included offense of sale of narcotics, "undue prejudice will result to the accused" if the judgment is modified to enter convictions on that lesser included offense. (Internal quotation marks omitted.) *State* v. *Grant*, supra, 177 Conn. 148. Accordingly, I respectfully dissent from the majority's remand order insofar as it fails to order modification of the judgment and resentencing in accordance therewith.

PALMER, J., concurring in part and dissenting in part. I agree with the majority insofar as it reverses the conviction of the defendant, Quentin T. Ray, on five counts of sale of narcotics by a non-drug-dependent person under General Statutes § 21a-278 (b). In my view, however, the interests of judicial economy militate in favor of seeking supplemental briefs from the parties on the issue of whether the trial court should render a judgment of conviction on those five counts for the lesser included offense of sale of narcotics under General Statutes § 21a-277 (b). The state undoubtedly will seek that relief in a motion for reconsideration, as it recently

to avoid requesting or agreeing to submit a lesser included offense to the jury"; [6] "the [s]tate would obtain an unfair and improper strategic advantage if it successfully prevents the jury from considering a lesser included offense by adopting an all or nothing approach at trial, but then on appeal, perhaps recognizing the evidence will not support a conviction on the greater offense, is allowed to abandon its trial position and essentially concede the lesser included offense should have been submitted to the jury"; and [7] "[t]he defendant may well have foregone a particular defense or strategy due to the trial [court's] rejection of a lesser included offense" [internal quotation marks omitted]).

To the extent that the majority could find any of these rationales convincing, at the very least, rather than determine that the judgment should not be modified, the better course would be to request supplemental briefs on whether this court can and should modify the judgment to reflect a conviction of § 21a-277 (b) as a lesser included offense of § 21a-278 (b).

has done following this court's decision in *State* v. *Sanseverino*, 287 Conn. 608, 949 A.2d 1156 (2008),[1] and I see no reason why we should not address and resolve the issue in this opinion rather than waiting to do so in a subsequent opinion. I therefore respectfully dissent from the majority opinion to the extent that the majority declines to seek supplemental briefs from the parties on the issue of whether the state is entitled to have the trial court render a judgment of conviction on five counts of sale of narcotics under § 21a-277 (b).

---

[1] On July 10, 2008, the state filed a motion for reconsideration or, alternatively, reconsideration en banc, of this court's decision in *Sanseverino*. Our decision on that motion is pending.